Reese, J.
delivered the opinion of the court.
This is a bill filed by the complainant to have dowér assigned her in a tract of land conveyed by the husband in his life time to the defendant, his son, with the purpose and intent, as the complainant alleges, to deprive her of her dower therein, and for an account; and whether said conveyance was fraudulent and void as against the widow’s claim for dower by the provisions of the act 1784, ch. 22, sec. 8, was, aside from the account of profits prayed, the only subject of controversy, for the allegation in the answer of infidelity of the wife is uncoupled with a statement of elopement. The defendant insisted upon the validity of the deed, and resisted the assignment of dower and the cl aim for account. And the whole question, both as respects the validity of the conveyance and the amount of profits if the conveyance as against the complainant should be set aside, were proper for the con-, sideration of a court of equity, and the chancellor might well have decided upon the whole matter. But the chancellor saw proper to call before him and empannel a jury to whom was submitted the whole question, as well touching the matter of account as the validity of the deed. The jury in their Verdict find the deed to be fraudulent as against the complainant, and they assess her damages for the detention of her dower to seven hundred and twelve dollars and forty-one and a fourth cents; this finding formed the basis of the chancellor’s decree. We are satisfied with the decree of the chancellor as to the invalidity of the deed, but as toihem.n-ter of account we are not satisfied with the mode in which it was taken, not being according to the course of a court of chancery, nor are we satisfied with the result in point of amount. The proof in the case makes the annual rent of the entire tract to have been at most one hundred dollars; *10 and the time of the rendition of the verdict and the pronoün-of the decree from the death of the husband was about six years and six months. The damages given in England ^ ^jme w[jel[1 jn that country the writ of unde nihil habet was in general use, was, by the express purview and terms of the statute 20 Iienry III, called the statute of Merton, the one-third of the annual profits of the estate from the death of the husband. But it has been insisted that this verdict is conclusive; that it is not to be regarded as auxiliary to the chancellor in pronouncing his decree, but that the proceeding was necessary in order to have pronounced any decree at all upon the subject of the account prayed for in the bill; and it is even urged that a court of chancery has no jurisdiction to give relief in a matter of account in dower, when the right to dower is disputed and is sent to be tried at law; such trial at law of the right it is said ousts the court of its power over the relief as to the matter of account, and turns the question into one of damages, to be passed upon, if at all, by the jury which determines the right. This objection, even as regards the proceeding in'England, is utterly groundless. The case of Curtis vs. Curtis, a leading case and very peculiar in its circumstances, (2 Brown’s cases in chancery, 620,) covers the whole ground of the objection, and decidedly negatives its correctness. A bill was filed to have dower assigned, and for an account. The heir in his answer denied the marriage. The bill was retained and leave given complainant to investigate her right at law. She sued out her writ of dower, and the heir pleaded, but before issue joined died, leaving a widow, who was devisee for life; a bill of revivor was filed against her, and a declaration in the case was delivered to her, and she pleaded: 1st. That the plaintiif had not been married to the elder Curtis. 2d, That he had not been seized during coverture. The court of common pleas sent the first issue to the Bishop of Bath and Wells, who certified the marriage, and the issue upon the seizin was found in favor of the plaintiff; and then the widow of the heir died, and afterwards the complainant, the widow of the elder Curtis, died, and her personal representatives filed a bill of revivor and supplement against the rep *11 resentative and devisee in remainder of the first heir, to have an assignment of dower upon the right to dower so ascertained, and an account of profits up to the time of the death of the complainant in the original bill, against the several estates represented by the defendants. And the dower was assigned, and the account given accordingly; and Lord Alvanly distinctly admitted that the remedy was gone at law. He says, indeed, “that it seems to him an odd construction of the statute of Merton, that the damages given by it are to be considered strictly as damages in the breast of a jury, and not capable of ascertainment by the court, and that therefore they are to die with the person; however, so it has been determined.” Again, in the same case, he says, “If in this court you deny the widow’s right to dower, the question must be tried at law; but where the fact is ascertained, she shall have her relief here.” And referring to the case of Dormer vs. Fortescue, determined by Lord Hardwicke, and reported by Mr. Atkyns, Lord Alvanly says, “as far as one can collect Lord Hardwicke’s sentiments from the case, he thought this court would expect the widow to establish her title at law, but she having done so would give her relief here as to the mesne profits.” That is saying let the widow bring her action at law out of form, and for the purpose of determining her title to dower, and when she has done that we will give adequate relief; and I agree in thinking that the widow labors under so many disadvantages at law, that she is fully entitled to every assistance that this court can give her, not only in paving the way for her to establish her right at law, but also by giving complete relief where the right is ascertained.” In the subsequent case of Mundy vs. Mundy, Lord Loughborough, speaking on the question of jurisdiction, says; “That it is not controverted that dower is very similar to the right of tenant in common. This court has entertained bills for partition, and the jurisdiction has been admitted in bills for dower for a long time under some circumstances. The principle of that is just, for where parties have a common interest they have it ascertained. That necessarily involves a species of account. If that is answered by the proceedings here, there is no occasion to send it to *12 law, where there is a degree of intricacy and difficulty. This has had the effect of almost putting an end to writs of dower. In the course of twelve years I do not remember more than two, and they must be in the court of common pleas. But this jurisdiction is peculiarly proper on another ground. Dower at law can only be opposed by a legal bar. Now, equitable bars are in daily practice.” 2 Ves. jr., 1793, and 4 B. C. C. 295: see also Goodenough vs. Goodenough, Dickens, 795. The learned commentator on American Law, vol. 4, p. 71, 3d edition, says, “Dower may be recovered by bill in equity as well as action at law. The jurisdiction of chancery over the claim of dower has been thoroughly examined, clearly asserted, and definitely established. It is a jurisdiction concurrent with that at law, and when the legal title to dower is in controversy it must be settled at law; but if that be admitted or settled, free and effectual relief can be granted to the widow in equity, both as to the assignment of dower and the damages. The equity jurisdiction was so well established, and in such exercise in England, that Lord Lough-borough said that writs of dower had almost gone out of practice. The equity jurisdiction has been equally entertained in this country, though the writ of. dower unde nihil habet is the remedy by suit in practice.” The preceding review of authorities will, I fear, be thought a labor of super-errogation, when it is remembered that in this State we have no writ of dower, unde nihilhdbet, or other writ of right, nor any remedy on the subject of dower, except the summary one given by the statute of 1784, ch. 2, not adapted- to taking the account or ascertaining damages, and the remedy by bill in equity; and when also it is. remembered that the act of 1823, ch. 37, gives to widows dower out of the equitable estates in land of which their husbands were owners at the time of their death; and lastly and especially, when it is remembered that the act of 1835, ch. 19, sec. 4, expressly provides “that the circuit courts shall have original and concurrent jurisdiction with the chancery courts of all petitions relative to dower.” It is obvious that it was unnecessary, perhaps improper, to have submitted the matter of account to the jury; at all events, their finding does not exclude the court *13 from calculating and ascertaining for itself the true amount of compensation to be decreed to the widow tor the tion of her dower. No doubt is entertained by us that in cases of dower in chancery, where the marriage or the seizure is denied, or where adultery and elopement are imputed, or where the tenant in possession does not claim under the husband or the heir but adversely, that in some of these cases an issue should be submitted to a jury, in others an action should be directed to be brought at law. Such a step would be in accordance with the course of a court of chancery; but the facts being found, or the right established in these cases in favor of the complainant, the court should give complete relief by assigning the dower, and taking all proper accounts between the parties. The proceeding in the chancery court, and the conclusiveness of the verdict in this case rendered, are sought to be maintained by some general observations in the case of Thompson vs. Stacy, on the subject of dowerat common law, and the damages given by the statute of Merton, and in reference to the remedy furnished by our act of 1784. The point before the court in that case is'stated in the note of the reporter: “A dowress cannot main<-tain an 'action of assumpsit for use and occupation against a tenant from year to year for rents which accrue after the death of the husband and before the assignment of her dower, although no damages were given to her when her dower was assigned.” This was the only point in the case, and of the correctness of the decision upon that point the court now, as then, entertain no doubt. But in the observations made by the writer of the opinion upon the widow’s rights and remedies at common law, the reporter, from his notes of the case, seems to have supposed the three following propositions to have been involved: “1st. That under the statute of 1784, authorizing the widow to file her petition in the county court or circuit court, if the right to dower is disputed, a jury must be empannelled to try it,"and the damages are to be assessed by the jury. 2d. If, upon a petition filed under said statute, the widow’s right to dower is not disputed, and she claims damages which are not admitted, a writ of enquiry must be awarded to ascertain them. And 3c[. If *14 the widow’s dower be assigned under the provisions of that and no damages be assessed or given to her m the proceeding, her right to recover damages is forever gone.” If rep01qer pe correct in supposing that the general observations referred to contain the conclusions in the three propositions stated above, then the reasoning in the present case establishes, that we doubt the correctness of some of them, and are not at present prepared to yield an authoritative sanction to any one of them.
Upon the whole we are satisfied that one-third of the amount of the verdict in this case rendered will be a proper sum to allow for the rents and profits; or rather, perhaps, thirty-three and one-third dollars for each year, and interest thereon, which the clerk and master will ascertain and calculate, and thereon make his report.
INTERLOCUTORY DECREE.
This cause came on for hearing this 28th January, 1840, before the supreme court, whereupon it appearing to the court that the verdict of the jury assessing complainant’s damage for the detention of her dower is excessive and not warranted by the evidence in the cause, it is ordered, adjudged and decreed by the court that the decree of the court below be reversed, and that the clerk and master of this court take and state an account of said damages, being one-third of the annual value of said land from the death of John London to, this time, with interest, estimating the yearly value of the whole tract of land at one hundred dollars per year, and allowing the complainant one-third thereof, and until the coming in of said report other matters are reserved.
At a subsequent day of the term the clerk and master, in pursuance of the interlocutory order, reported the sum of two hundred and seventy-five dollars and twenty-five cents in favor pf the complainant, whereupon the following final decree was rendered in the cause,
FINAL DECREE.
This cause came on again for final hearing, upon the report of the clerk and master, made in pursuance of the interlocutory order heretofore made, and the said report is in all things affirmed; and it appearing to the. satisfaction of the *15 court that the conveyance of the land in the pleadings mentioned, from John London, senior, to the deiendant, was with the fraudulent intent of defeating the complainant of her right of dower in said land, it is therefore ordered, adjudged and decreed that said conveyance, so far as regards the rights of the complainant, he and is hereby declared void, and that a writ issue to the sheriff of Marshall county commanding him to summon five freeholders of said county, who shall allot and set apart to said Pamelia London the one-third part in value of said land, including the mansion house, if the said Pamelia shall so elect, but in laying off said dower they shall have regard to the improvements put on the said land by the defendant since the death of John London, senior, which are not to be taken into consideration in estimating the value of said land, but the same shall be estimated in value according to its state and condition at the death of John London, senior. And in case the complainant shall elect to take her dower including the mansion house, or the same shall be allotted to her, then the value of the improvements put upon said part since the death of John London, senior, so allotted in dower to complainant as in its improved state, shall be one-third of the whole value of the land in the fall of 1832 at the death of John London, senior. And it is further ordered, adjudged and decreed that inlaying off said dower proper regard shall be had to the whole tract and to the adjoining lands of defendant so as to do as little injury as possible to the same in doing justice to the complainant. And it is further ordered, adjudged and decreed that the complainant recover of the defendant the sum of two hundred and seventy-five dollars and twenty-five cents for her damages, as reported by the clerk and master, and that the defendant pay all the costs of the court below; and that half of the costs of this court be paid by the defendant and the other half by the complainant.