STATE of Tennessee on relation of Ronald A. WEBSTER, District Attorney General for Knox County, Tennessee, Appellee,

v.

Marvin DAUGHERTY et al., Appellants.

Court of Appeals of Tennessee, Western Section.

Aug. 19, 1975.

Certiorari Denied by Supreme Court Nov. 3, 1975.

Myron C. Ely, Knoxville, for appellant Wells.

William C. Koch, Jr., Asst. Atty. Gen., R. A. Ashley, Jr., Atty. Gen., Nashville, for appellee.

MATHERNE, Judge.

The defendant Hubert Wells, owner of premises know as 25–70 Truck Club on Asheville Highway in Knox County, Tennessee, appeals from an order of the Criminal Court of Knox County, permanently enjoining him "from conducting, maintaining, or in any wise participating in: (a) the operation of a house of ill fame, a bawdy house, or brothel; and (b) soliciting and/or procuring for the purposes of prostitution and sexual immorality upon the premises described as Tract I in the original Petition," and he is ". . . permanently and perpetually enjoined from participating in any of the above enumerated activities at any other place in Knox County, Tennessee."

On appeal the landowner Wells insists: (1) the definition of "nuisance" in T.C.A. § 23–301, subsection 1, paragraph (c), enacted as Chapter 277, Public Act 1973, is overbroad and violates the state and federal constitutions; (2) the verbiage of subsection 2 of the same statute is overbroad in its application to the "owner" of the premises referred to; (3) there is no material evidence upon which to base the injunction against him as the owner of the premises; (4) the injunction against him is unconstitutionally overbroad, and is not authorized by the statute; (5) the court erred in failing to dismiss the petition as to Tract II described in the petition; and (6) he did not engage in the illegal activities, had no knowledge thereof, and should not be subjected to the embarrassment of an injunction against him.

## I.

The record reveals the premises consist of two buildings, one used as a restaurant and referred to in the pleadings as Tract II; the

other is the club and is referred to as Tract I. The unlawful acts were found to have been carried out on Tract I only.

By written lease dated September 20, 1972, Hubert Wells leased Tract I to Carol Randels and Glen M. Daugherty for a period of two years beginning October 1, 1972, "to be used by the Lessees for the operation of a legitimate and desirable truck stop, and no other."

On January 25, 1973, the premises of the truck club was raided and six persons were arrested on various charges of operating a house of ill fame or bawdy house, prostitution, assignation, and aiding and abetting in prostitution. The record reveals these individuals pled guilty as charged in the General Sessions Court of Knox County, Tennessee, and were each fined $50.00 and the costs. On June 14, 1974, one Karen Carter was arrested at the premises and charged with prostitution, and Thomas Daugherty was arrested and charged with aiding and abetting prostitution. Both of these defendants pled guilty and paid a $50.00 fine.

The evidence reveals various agents of the Tennessee Bureau of Criminal Investigation made visits to the club and obtained evidence the practice of prostitution was about the main business of the club. The defendant Marvin Daugherty testified the purpose of the club was to run a house of prostitution for truck drivers. He stated the number of girls available varied from two to four, and they were local girls. The customers were basically restricted to truck drivers. The evidence does not establish the landowner had actual knowledge of the illegal activities. The landowner testified he was in the restaurant many times, but he was never in the club building. The record reveals considerable newspaper publicity concerning the many arrests and convictions growing out of the operation of the club.

## II.

This lawsuit is brought by the state on relation of the District Attorney General as allowed by T.C.A. § 23–303. The petition alleges the maintenance of a public nuisance and prays the abatement thereof as defined and allowed by T.C.A. §§ 23–301 through 23–315.

The landowner claims the definition of "nuisance" as set out at T.C.A. § 23–301, subsection 1, paragraph (c), as enacted by Chapter 277, Public Acts 1973, is unconstitutionally overbroad, vague and indefinite. The statute complained of reads as follows:

"(c) 'Nuisance' means that which is declared to be such by other statutes and in addition thereto means any place in or upon which lewdness, assignation, prostitution, unlawful sale of intoxicating liquors, unlawful sale of any regulated legend drug, narcotic or other controlled substance, unlawful gambling, any sale, exhibition of possession of any material determined to be obscene or pornographic, quarreling, drunkenness, fighting or breaches of the peace are carried on or permitted, and personal property contents, furniture, fixtures, equipment and stock used in or in connection with the conducting and maintaining any such place for any such purpose. The term 'lewdness' includes all matter of lewd sexual conduct or live exhibition and shall include, but is not limited to possession, sale or exhibition of, any obscene films or plate positives, films designed to be projected upon a screen for exhibition, films or slides either in negative or positive form designed for projection on a screen for exhibition."

The only lawsuit of which we have knowledge, dealing with the constitutionality of the above statute is the case of *Airways Theater, Inc. et al. v. Phil M. Canale, Jr., et al.,* decided by a three judge panel in the Federal District Court at Memphis. The order of that Court was filed on January 18, 1974. The issue there seemed to be whether the references to lewdness and obscenity as used in the statute were unconstitutionally overbroad. The Court held

those references were overbroad and struck various references to lewdness and obscenity from the statute, and concluded the statute could constitutionally read as follows:

"(c) 'Nuisance' means that which is declared to be such by other statutes and in addition thereto means any place in or upon which . . . assignation, prostitution, unlawful sale of intoxicating liquors, unlawful sale of any regulated legend drug, narcotic or other controlled substance, unlawful gambling, . . . quarreling, drunkenness, fighting or breaches of the peace are carried on or permitted, and personal property, contents, furniture, fixtures, equipment and stock used in or in connection with the conducting and maintaining any such place for any such purpose."

We therefore accept the statute as approved by the federal court, and we will consider the present constitutional attack as relates to acts of prostitution and assignation.

■ The words of a statute, if of common usage, are to be taken in their natural and ordinary sense without a forced construction to limit or extend their meaning. *Ellenburg v. State* (1964), 215 Tenn., 153, 384 S.W.2d 29; *Palmer v. State* (1869) 47 Tenn. 82. When considered in relation to acts of prostitution and assignation, we hold the very words alone are sufficiently precise to put any reasonable individual on notice concerning what conduct is prohibited. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). And, it can be said that those "who desire to obey the statute will have no difficulty in understanding it." *Colten v. Commonwealth of Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972).

■ We conclude the definition of the word "nuisance" contained in the statute, as relates to prostitution and assignation cannot be deemed unconstitutionally overbroad, vague and indefinite.

III.

■ The defendant landowner argues T.C.A. § 23–301, subsection 2, violates Article 1, Section 8, and Article 11, Section 8 of the Constitution of Tennessee, and the Fourteenth Amendment to the Constitution of the United States, wherein that statute subjects the owner of the premises to injunctive restraint for the sole reason he owns the premises.

Subsection 2 of the statute is as follows:

"Any person who uses, occupies, establishes, or conducts a nuisance, or aids or abets therein, and the owner, agent or lessee of any interest in any such nuisance together with the persons employed in or in control of any such nuisance by any such owner, agent or lessee is guilty of maintaining a nuisance and such nuisance shall be abated as provided hereinafter."

In *Weakley v. Page* (1899) 102 Tenn. 178, 53 S.W. 551, the plaintiff Weakley sought the abatement of a nuisance allegedly existing on the adjoining property of the defendant Page. The facts were that Page had put one Mattie Vaughn in possession of the second story of his premises, and she and some ten or twelve other women were there conducting a bagnio. The bill alleged the plaintiff could not rent his property due to the activities illegally conducted on the defendant's property, thus sustaining private and special damage due to the public nuisance. The bill alleged the defendant Page knew of the conduct of the people in possession of his premises and connived with them for the purposes of his premises being so used. On the issue of the alleged knowledge in the owner Page, the Court stated:

"In regard to the statement in the bill that Mr. Page was aware of the character of the use to which his building was put, we think it proper to say that we based our finding that the charge is true on the ground that he must be presumed to know the use to which his building is put; and also on the proof which shows that he gave his personal check for $1,028 to a

furniture establishment in the city to fit up this house, . . ."

In *State v. James, et al.* (1940) 177 Tenn. 211, 145 S.W.2d 783, an action was brought to abate a public nuisance, alleged to be the illegal sale of intoxicating liquor and the keeping, maintaining or conducting bawdy or assignation houses. The facts establish the owners operated a hotel and the agents and employees of the owners did conduct such illegal activities on the premises. On the issue of knowledge in the owners, the Court held the owners bound by the acts of their agents and servants who operated the hotel, and proof of actual knowledge was not necessary in order to justify an injunction against them prohibiting such unlawful activity in the future.

In the case at bar the record reveals a written lease for a lawful purpose. There is no proof of actual knowledge of the nuisance in Wells. There is no proof of his conniving with the lessees in the maintenance of the nuisance as appeared in *Weakley.* There is no proof the parties who operated the premises in such manner as to constitute the place a nuisance were the agents or employees of Wells as existed in *James.* Here, we have premises lawfully leased but put to such illegal use by the lessee as to constitute the premises a nuisance under the statute, with no proven knowledge in the owner-lessor. Under such circumstances is it a denial of due process to subject the owner-lessor to the restrictions of a perpetual injunction that the premises not be so used in the future?

There is a conflict among the authorities on the point in issue. See: 66 C.J.S. Nuisances § 88b, p. 845; the cases annotated at 121 A.L.R. 642, et seq.; 58 Am.Jur.2d Nuisances, § 49, p. 616. Upon an examination of the cases, we conclude the better view to be the owner-lessor may be subjected to the writ enjoining him from permitting the premises to be a public nuisance in the future, even though he had no knowledge nor means of knowledge of the past illegal acts. And, the subjection of the owner to such injunction does not violate due process as guaranteed under the state and federal constitutions.

It must be understood we are not dealing with a situation where the owner is being held liable for damages due to the existence of a nuisance on his premises, nor is the owner being subjected to any penalty, fine or forfeiture. There are many cases holding an owner not liable in damages in the absence of knowledge of the nuisance. See and compare: *Ahern v. Steele* (1889) 115 N.Y. 203, 22 N.E. 193; *Tennessee Coal, Iron & R. Co. v. Hartline* (Ala.1943) 11 So.2d 833; *City of Phoenix v. Harlan* (Ariz.1953) 255 P.2d 609.

We are here dealing with the abatement of a public nuisance. At common law the owner of premises was under the duty, and upon him rested a primary obligation to keep his premises from becoming a public nuisance. *State ex rel. Bailes v. Guardian Realty Co.* (1939) 237 Ala. 201, 186 So. 168, citing Joice on Nuisances, § 453. The statute, T.C.A. § 23–301, 2, does no more than was required at common law.

The statute imposes no penalty upon the owner, nor does it act retrospectively, its whole purpose is prospective, having for its sole object and aim, the prevention, by injunction, of a continuation of the illegal use of the property. The owner's property is not padlocked, nor taken from him on account of the past illegal use of it by his tenants, but he is enjoined from allowing a continuation of that use. The owner's ignorance of the past illegal use of his property by his tenants does not relieve him of responsibility for its future use. *Bailes,* supra; *Martin v. Blattner* (Iowa 1885) 25 N.W. 131.

The premises, under the proof, is a nuisance as defined by statute, and the owner has no standing to complain that he be enjoined from permitting the continuance thereof. The owner is not denied the lawful use of his property, and that is all to which he is entitled. The right of the state to protect the health, welfare and morals of

the people justifies the order on the defendant owner that the nuisance not be continued.

## IV.

We must now determine, under the present state of the law in Tennessee, whether this lawsuit is to be tried in accordance with the rules of chancery. The jurisdiction to abate a public nuisance is by T.C.A. § 23–302, "conferred upon the chancery, circuit, and criminal courts . . ." This lawsuit was filed in the Criminal Court of Knox County.

Section 23–308 [1] of the statute required the procedure in any one of the three courts to be as in chancery and gave the criminal and circuit courts the full jurisdiction and powers of courts of equity. Section 23–308, however, was repealed by Chapter 565, Public Acts 1972.

In the recent case of *Ashe v. State ex rel. Shriver* (Tenn.1975) 518 S.W.2d 360, the Court held a proceeding to abate a public nuisance is an action of an equitable nature. That ruling is in keeping with previous expressions of the Supreme Court of Tennessee that chancery has the inherent power to abate nuisances. See and compare: *Weakley v. Page,* supra, and the authorities therein cited.

We note T.C.A. § 16–511,[2] gives a circuit court jurisdiction of lawsuits "of an equitable nature," provided no objection is raised thereto. This statute is codified under "Chapter 5—Circuit and Criminal Courts." We conclude the words "circuit court" as used in the statute refer to courts of law as distinguished from courts of equity, and a criminal court could be included within its provisions.

The foregoing code section is not a denial of jurisdiction to a court of law of matters of an equitable nature, but rather a recognition of such jurisdiction if not objected to. *Hewgley v. Trice* (1960) 207 Tenn. 466, 340 S.W.2d 918. And, where a lawsuit may be filed in a court of law or in a court of equity, an objection to the jurisdiction of the court of law does not result in a transfer of the lawsuit; the court first obtaining jurisdiction shall retain the same. *Hamilton National Bank v. Champion* (1957) 202 Tenn. 205, 303 S.W.2d 731. We therefore hold the present lawsuit, being one of an equitable nature, *Ashe,* supra, and subject to being filed in either the circuit, criminal or chancery court, T.C.A. § 23–302, was properly filed in the criminal court and that court will proceed upon the principles of a court of equity, T.C.A. § 16–511.

## V.

Our Supreme Court in *Ashe v. State, ex rel. Shriver,* supra, held that since the repeal of T.C.A. § 21–1011, there is no longer a right to trial by jury in lawsuits of an equitable nature. In the present lawsuit the defendant demanded a jury in his answer, and the trial judge impaneled a jury and submitted certain issues of fact for a determination by that body.

We interpret the ruling in *Ashe* to be that since the repeal of T.C.A. § 21–1011, a party cannot in a lawsuit of an equitable

---

1. "23–308. *Rules of equity.*—Proceedings under §§ 23–301—23–312, whether in the chancery, circuit, or criminal courts, shall be conducted in accordance with the procedure of court of chancery where not otherwise expressly provided; and all of said courts having cognizance of such proceedings are hereby given the full jurisdiction and powers of courts of equity with respect to such proceedings. [Acts 1913 (2nd E.S.), ch. 2, § 5; Shan., § 5164a7; Code 1932, § 9330.]"

2. "16–511. *Equity powers.*—Any suit of an equitable nature, brought in the circuit court, where objection has not been taken to the jurisdiction, may be transferred to the chancery court of the county, or heard and determined by the circuit court upon the principles of a court of equity, with power to order and take all proper accounts, and otherwise to perform the functions of a chancery court. [Code 1858, § 4236 (deriv. Acts 1851–1852, ch. 152, § 9); Shan., § 6074; Mod.Code 1932, § 10329; Acts 1972 (Adj.S.), ch. 565, § 2.]"

nature demand a jury as a matter of right. The *Ashe* opinion did not abolish jury trials in suits of an equitable nature as existed prior to, or independently of, the repealed statute.

 The constitutional guaranty of trial by jury refers to the right at common law actions, not to suits of an equitable nature. *Neely v. State* (1874) 63 Tenn. 174.

In 1846 the legislature passed an Act to amend the practice in chancery courts so as to entitle either party to a right to trial by jury. *James v. Brooks* (1871) 53 Tenn. 150. The 1846 statute (later codified as the now repealed T.C.A. § 21–1102) was the only source of right to trial by jury in chancery. *Green County Union Bank v. Miller* (1934) 18 Tenn.App. 239, 75 S.W.2d 49. Prior to the 1846 enactment the granting of a jury in chancery was largely within the discretion of the chancellor. *Allen v. Saulpaw* (1880) 74 Tenn. 477.

 We hold the present law of Tennessee governing trial by jury in suits of an equitable nature is the same as existed in this state prior to 1846.

In England, before the American Revolution, it was the practice in certain cases of legal rights or difficult fact questions, for the chancellors to give leave to the parties to bring an action at law on the issues or to direct the issue to be tried by a jury in a court of law. If the chancellor directed an issue be tried by a jury, he generally would formulate the issue and send it to the law court for trial. After the jury had heard the evidence and returned its verdict, such verdict upon the issue was brought back to the chancellor and he, thereupon, accepted or rejected such verdict and decided the case. Gibson's Suits in Chancery, 5th Ed., Vol. I, § 570, pp. 630–631, citing: 2 Dan. Ch.Pr. 1071, et seq.

This procedure was generally followed in North Carolina, and adopted in Tennessee by Acts of 1801, Ch. 6, §§ 36, 40, based on North Carolina Acts of 1782, Ch. 11, *Gibson's*, supra. We see no reason, except for

unnecessary delay in the completion of the lawsuit, why the above procedure cannot now be followed in Tennessee. The chancellors of Tennessee, however, at an early date began the practice of impaneling the jury in the chancery court. See: *Orgain v. Ramsey* (1842) 22 Tenn. 580; *London v. London* (1839) 20 Tenn. 1.

Prior to 1846 the chancellors of Tennessee could submit such issues to the jury as they deemed appropriate. The chancellors were not bound by the finding of the jury. The Court in *Orgain v. Ramsey,* supra, stated the rule:

". . . for although it is true a chancellor is not bound by the finding of a jury upon an issue of fact out of chancery submitted to them, and may disregard the finding and decide the cause 'in the teeth of the verdict,' yet it does not follow that it is to have no weight with him and much less does it follow that this court is to be uninfluenced thereby."

See also, *Timmons v. Garrison* (1843) 23 Tenn. 147.

In *London v. London,* supra, a widow filed a bill to have dower assigned to her in a tract of land which she alleged her deceased husband conveyed to his son in an effort to defeat her of dower, and for an accounting. The chancellor impaneled a jury and submitted to it the issues of whether the conveyance was fraudulent, and if so to assess damages. The jury found the deed fraudulent as against the widow, and assessed her damages for the detention of her dower at $712.41½. The chancellor entered a decree accordingly. The Supreme Court affirmed insofar as the fraudulent conveyance was concerned. On the issue of damages, however, the Court reversed because the account was not properly taken according to the forms of equity, and the amount awarded was too much. After a remand to the clerk and master to figure the account as outlined by the Court, a decree was entered in the Supreme Court for $275.25 as damages due.

We therefore conclude the present state of the law in Tennessee is that a chancellor may submit such issues of fact to the jury as he deems appropriate; he need not submit all issues of fact to the jury; he is not bound by the finding of the jury, but he must give great weight to its finding on the issues submitted; issues submitted which are contrary to the forms of equity, *London* case, will not be allowed; on review the appellate court looks to the entire evidence and weighs all the testimony in the light of the jury verdict, and will reverse if it determines the chancellor erred in accepting or rejecting the verdict, *Orgain* case and *Timmons* case; on review the holding of the chancellor as relates to all issues, those submitted to the jury and those not submitted, will be treated by the court *de novo*; the material evidence rules is not applicable on appeal. We have noted *Pan-O-Ram Club, Inc. v. State* (Tenn.1965) 217 Tenn. 137, 395 S.W.2d 803, and we find no conflict between that decision and the rules herein announced.

In the case at bar the following questions were submitted to the jury, and the following answers given:

"1. Has the State shown by a preponderance of the evidence the maintenance of a house of ill fame, a bawdy house or brothel, kept for the purposes of prostitution on the described property owned by the defendant, Hubert Wells, as alleged?

Answer: YES.

"2. Has the State shown by a preponderance of the evidence that persons frequenting the described property owned by the defendant, Hubert Wells, have been solicited to engage in prostitution and crimes against nature as alleged?

Answer: YES.

"3. Has the State shown by a preponderance of the evidence that the described premises owned by the defendant, Hubert Wells, are frequent-ed by persons who carry weapons as alleged?

Answer: YES.

"4. Has the State shown by a preponderance of the evidence the alleged arrests and convictions of the various alleged individuals for the alleged offenses of prostitution, assignation, keeping a house of ill fame, brothel or bawdy house on the premises of the defendant, Hubert Wells, known as the 25–70 Truck Club?

Answer: YES."

 Here the criminal court judge was sitting as a chancellor in a lawsuit of an equitable nature. The foregoing issues, under the facts, were proper to submit to the jury, at the discretion of the trial judge. The preponderance of the evidence supports the findings of the jury, and we affirm the trial judge in his holding the premises designated as Tract I in the record constituted a nuisance.

With those findings of fact the trial judge correctly made permanent the injunction against the defendant owner as heretofore stated. The procedure meets the requirements of a jury at chancery under the rules now governing that procedure in Tennessee.

## VI.

 We hold the statute, T.C.A. § 23–301, does not violate Article 11, Section 8 of the Constitution of Tennessee, because the Act is equally applicable to all landowners in the same position; it cannot be deemed an enactment for the benefit of any one or more landowners. See: *State, ex rel. v. Persica* (1914) 130 Tenn. 48, 168 S.W. 1056.

 The claim that the injunction is overbroad because it enjoins the defendant from committing the nuisance anywhere in Knox County is without merit. If the injunction had not so stated, it would have that effect under T.C.A. § 23–306.

It would have been proper for the trial judge to have dismissed the lawsuit as to

Tract II described in the petition. The decree, however, refers only to Tract I, and we hold it not reversible error to fail to dismiss as to Tract II, nor is an amendment of the decree necessary.

It results the judgment of the trial court is affirmed. The cost of this appeal is adjudged against the appellant.

CARNEY, P. J., and McAMIS, P. J., Retired, concur.