David HURT, Sr. and David Hurt, Jr. d/b/a Hurt Seed Company, Appellants,

v.

Freddie EARNHART, Appellee.

Court of Appeals of Tennessee, Western Section.

March 16, 1976.

Certiorari Denied by Supreme Court July 26, 1976.

A. D. Walker, Jr., Dyersburg, for appellants.

T. J. Emison, Jr., Alamo, for appellee.

NEARN, Judge.

Freddie Earnhart entered into a contract with Hurt Seed Company to deliver 10,000 bushels of soybeans to Hurt Seed Company by the end of November 1972, for which beans Hurt was to pay $3.25 per bushel. Earnhart did not deliver the full 10,000 bushels contracted for and Hurt sued for its damages in the Chancery Court of Lauderdale County on March 15, 1973.

The defendant filed his answer which denied the damages as alleged and demanded a jury to try the issues of fact.

Thirteen issues were submitted to the jury for determination. The jury returned their answers on seven of the issues and announced they were "hung" on the remainder. The Chancellor took the seven issues that were answered and framed or based his decree thereon. The unanswered issues were deemed immaterial.

The decree awarded Hurt a judgment for $2,396.94 instead of the $17,835.33 sued for.

Hurt has appealed with seven Assignments of Error. Five of those seven are addressed to the preponderance of the evidence and insist that we should weigh same and reverse if we conclude contrary to the finding of the jury. The remaining two assignments in essence fault the Chancellor for not ignoring the jury verdict and for directing a verdict for the plaintiff in the amount sued for of $17,835.33.

The manner in which the Assignments of Error are considered is dependent upon whether this matter has arrived in this Court for a *de novo* review under T.C.A. § 27–303 or for a review of a jury verdict as at law under T.C.A. § 27–302. That is to say, do we weigh the evidence and make our own conclusions as to facts, or are we bound by the verdict of the jury and limited in our review of facts only to see if there is any material evidence to support the findings of the jury? The difference in these scopes of review is the difference between daylight and dark.

To follow the history of the jury verdict in Chancery cases in this State is like riding a judicial see saw. At times the effect of such a jury verdict has been at the pinnacle of persuasive power and at other times— the abysmal bottom. This teeter totter effect has been caused by the legislative enactment of laws and the repeal of those laws. This fluctuation has in turn caused some confusion among members of the bar; some reported cases hold that the Chancery jury verdict is advisory only, and others hold that it has the same force and effect as

a jury verdict at law. Both lines of cases are correct, for the correctness of the holdings depends upon a combination of three things, viz: (a) the nature of the litigation, (b) the statutes in existence at the time of the holding, and (c) whether the jury was called for by either of the parties or by the Chancellor.

Judge Matherne of this Court, in the case of *State Ex Rel. Webster v. Daugherty* (1975 Tenn.App., W.S.) 530 S.W.2d 81, in an excellent manner set out the history in this State of the Chancery jury trial and verdict, beginning prior to the American Revolution and bringing us to current times. The statutes and cases governing the matter were all concatenated in frame of time down to *Ashe v. State Ex Rel. Shriver* (1975 Tenn.) 518 S.W.2d 360. There is no need to attempt to reiterate that work here.

 Until the Legislature shall again speak on the subject, the general rule of law in this State now is that a party to a suit of an inherently equitable nature in the Chancery Court cannot demand a jury as a matter of right.[1] If the Chancellor allows a jury in a matter of an inherently equitable nature, whether it be on application of counsel or not, the effect of the verdict of such jury will be advisory only—the same as if the Chancellor had impanelled the jury on his own initiative. In such cases the Chancellor would weigh and find the facts himself in determining the issues. *State Ex Rel. Webster v. Daugherty*, supra; *Ashe v. State Ex Rel. Shriver*, supra. Therefore, a review of such case would be *de novo* in this Court with issues of fact being weighed by the preponderance of the evidence. However, the foregoing rule has application only to cases of an inherently equitable nature. The case *sub judice* is for damages for breach of contract. Jurisdiction of the Chancery Court in this matter is by statute. T.C.A. § 16–602; also see *Choctaw, Inc. v. Evans* (1970 Tenn.App., W.S.) 482 S.W.2d 563. Therefore, it cannot be a case of an inherently equitable nature. If it were, it would need no statutory assistance to reach the Chancery Court.

 The rule in cases of a non-equitable nature tried in the Chancery Court is that a party, as a matter of right, may demand a jury to try issues of fact, and the verdict of a jury so demanded has all the weight and effect of a verdict at law. The Trial Judge may reject it in his capacity as thirteenth juror, but such rejection leads to a new trial with a new jury—not a substituted verdict by the Chancellor. In such cases on appeal, just as the Trial Court could not, we cannot substitute our judgment of the facts for that of the jury, but must review only to see if there are any material facts to support the verdict of the jury. *State Ex Rel. Webster v. Daugherty, supra; Ashe v. State Ex Rel. Shriver,* supra.

Accordingly, the five Assignments of Error directed to the preponderance of the evidence cannot be considered by this Court and are overruled.

 The remaining two Assignments of Error put forth the argument that since the jury did not decide all issues the Chancellor should have withdrawn the issues from the jury and decided all the facts for himself in favor of the plaintiff. What we have previously said regarding the efficacy of a Chancery jury verdict in matters of this nature would preclude the Chancellor from finding the facts for himself. However, if the verdict was legally improper, the proper thing would have been to grant a new trial as in any jury case at law. Therefore, we will treat the last two Assignments of Error as complaints that because of the incompleteness of the verdict due to fewer than all issues being answered, a new trial should have been granted.

 A party with the right to a jury trial has the right to have all issues determined at one time by one jury. Tenn. Const. Art. 1, § 6; *Harbison v. Briggs Bros. Paint Mfg. Co.* (1962) 209 Tenn. 534, 354

---

1. By special statute governing particular kinds of cases, some exceptions to the general rule are made e. g. T.C.A. § 36–812.

S.W.2d 464. The exception to that rule is found in *Perkins v. Brown* (1915) 132 Tenn. 294, 177 S.W. 1158, wherein it was announced, that in those cases where liability is a foregone conclusion and an error has been committed in the assessment of damages, the case may be remanded by the appellate court for assessment of damages only by a different jury. Also see *Bauman v. Smith* (1972 Tenn.App., W.S.) 499 S.W.2d 935. Therefore in the case now before us, the parties had the right to have the issues tried by one jury. However, the right to a trial of issues by jury is only the right to a determination by that body of material issues. No one has the right to a determination of immaterial issues for they are dispositive of nothing and a waste of time. See *Wright v. Jackson Construction Co.* (1917) 138 Tenn. 145, 196 S.W. 488.

 The theory of the plaintiff was that Earnhart, by written contract, had agreed to deliver to plaintiff 10,000 bushels of soybeans at $3.25 per bushel by November 30, 1972; that Earnhart had only partially performed by the contract delivery date, but because of bad weather during the 1972 harvest season, the parties by agreement extended the contract delivery date; and that Earnhart repudiated his contract on March 3, 1973, at about which time beans were bringing $6.71 per bushel and Earnhart had failed to deliver 5,154.72 bushels of beans. Therefore, plaintiff was entitled to damages computed at the difference between the contract price and the market price of beans at the time of breach or $3.46 times number of undelivered bushels of beans.

The theory of the defendant was that although he admittedly was short 5,154.72 bushels under the contract, the plaintiff well knew in the first part of December 1972, that defendant was not going to deliver the remainder of the beans due under the contract, and therefore plaintiff's damages should be computed by taking the difference between the contract price ($3.25) and the market price of beans on December 1, 1972, ($3.715), which difference is $.465, times the number of contract beans undelivered.

Prior to trial, the following stipulations were agreed upon:

"1st. That the market price per bushel for soyabeans at Hales Point, Tennessee on December 1, 1972 was $3.715 per bushel.

2nd. That the Plaintiff, Hurt Seed Company admits that it knew on December 1, 1972 that Freddie Earnhart had not delivered to Hurt Seed Company 10,000 bushels of soyabeans.

3rd. That the Plaintiff, Hurt Seed Company did not purchase soyabeans on December 1, 1972 to cover the shortage on Freddie Earnhart's account."

From the foregoing statement of positions it is evident that the key issue is when did the plaintiff know that the contract had been breached? The answer to that question, coupled with a reading of T.C.A. § 47–2–713 [2] and the stipulations, accompanied by an application of a calculator, equals a conclusion of the case.

The sixth issue submitted to the jury and their answer is as follows:

"What was the first date that Hurt Seed Company or an authorized representative thereof knew that the alleged contract had been breached or could not be performed by Freddie Earnhart?

Answer 'Date': 1 Dec. 1972 "

The other seven so called issues were either undisputed issues such as:

---

2. T.C.A. § 47–2–713 "Buyer's damages for non-delivery or repudiation.—(1) Subject to the provisions of this chapter with respect to proof of market price (§ 47–2–723), the measure of damages for non-delivery or repudiation by the seller is the difference between the market price at the time when the buyer learned of the breach and the contract price together with any incidental and consequential damages provided in this chapter (§ 47–2–715), but less expenses saved in consequence of the seller's breach.

(2) Market price is to be determined as of the place for tender or, in cases of rejection after arrival or revocation of acceptance, as of the place of arrival."

"Did Freddie Earnhart agree to deliver to Hurt Seed Company, Halls, Tennessee, ten thousand (10,000) bushels of soyabeans during the months of October and November, 1972?

Answer: 'Yes' or 'No': _Yes_ "

or were rendered immaterial by the answer to question No. 6, such as:

"Did Freddie Earnhart, after December 1, 1972, continue to perform under the alleged contract with Hurt Seed Company?

Answer 'Yes' or 'No': ___"

We must conclude that the material issues were answered by the jury and the Chancellor committed no error in applying the stipulations, T.C.A. § 47–2–713 and a calculator thereto to arrive at the judgment amount of $2,396.94.

The remaining Assignments of Error are overruled and the decree below will be affirmed. Costs will be adjudged against appellant and surety.

CARNEY, P. J., not participating.

MATHERNE, J., concurs.