IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 4, 2003 Session

## STATE EX REL. KARL F. DEAN v. GEORGE L. VANHORN ET AL.

**Appeal from the Criminal Court for Davidson County**
**No. 3237     Steve R. Dozier, Judge**

———————————

**No. M2002-01969-COA-R3-CV - Filed August 10, 2005**

———————————

This appeal involves the courts' power to require a property owner to post a bond to regain possession of real property on which a public nuisance had been maintained. After the Metropolitan Government of Nashville and Davidson County filed suit in the Criminal Court for Davidson County seeking to enjoin the operation of a brothel at a Nashville address, the property owner conveyed the property to a Nevada corporation. Even though the new property owner agreed to the entry of an order permanently enjoining the operation of a house of prostitution on the premises, the city insisted that the new owner should also be required to post a $20,000 bond to assure compliance with the injunction. The trial court acceded to the city's request and conditioned the restoration of the property to the owner's control on the owner posting a $20,000 cash bond. The owner has appealed. We have determined that the trial court erred by conditioning the property owner's lawful use of its property on the filing of an open-ended bond.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

John E. Herbison, Nashville, Tennessee, for the appellant, I-65 Realty Partners, LLC.

Karl F. Dean, J. Brooks Fox, and John L. Kennedy, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County, Tennessee.

**OPINION**

**I.**

George L. VanHorn and Robert C. Spurgeon operated a business called the "Lipstick Modeling Agency" at 533 Fifth Avenue, South in downtown Nashville. Jerry C. Pendergrass had owned the property since 1998. While there is no evidence in this record that Mr. Pendergrass

played any role in the business or even that he knew what sort of business Messrs. VanHorn and Spurgeon were conducting, he was no stranger to the flesh trade.[1]

Between December 2001 and March 2002, female employees of the Lipstick Modeling Agency offered to perform oral and vaginal sex for money on two undercover officers employed by the Metropolitan Police Department and actually performed oral sex in return for money on two confidential informants employed by the Metropolitan Police Department. During the execution of a search warrant on March 13, 2001, the Lipstick Modeling Agency's employees and customers admitted that the business was a house of prostitution.

On March 28, 2002, the Director of Law of the Metropolitan Government of Nashville and Davidson County filed a petition to abate a public nuisance in the Criminal Court for Davidson County naming Messrs. VanHorn, Spurgeon, and Pendergrass as defendants. The petition sought an immediate, ex parte order to padlock the premises and a permanent injunction against operating a public nuisance at that location. It also requested the trial court to require the posting of "a reasonable performance bond to guarantee obedience to a permanent injunction prior to the removal of the padlocks." The trial court issued a temporary injunction directing that the premises be closed and padlocked pending a hearing.

Mr. Pendergrass's lawyer informed the trial court during an April 9, 2002 hearing that his client had sold the property on February 27, 2002 to I-65 Realty Partners, LLC ("I-65 Realty Partners"), a Nevada limited liability corporation. The parties also agreed that the property manager and its agents would be permitted access to the building for needed repairs and maintenance. On April 18, 2002, the trial court entered an order dismissing Mr. Pendergrass as a party and substituting I-65 Realty Partners as a party.

Thereafter, I-65 Realty Partners agreed to permit the city to remove all items on the premises that were used for the purpose of maintaining a house of prostitution and to permit the entry of a permanent injunction against operating or permitting the operation of a house of prostitution on the premises. The city responded by insisting that, in addition to enjoining future public nuisances on the premises, either the premises should remain closed for one year or I-65 Realty Partners should be required to post a $20,000 bond to secure its compliance with the permanent injunction. On June 20, 2002, the trial court filed an order permanently enjoining Messrs. VanHorn and Spurgeon and I-65 Realty Partners from "operating any type of adult business as defined by our Metro Code at the above location." The court also ordered I-65 Realty Partners to file a $20,000 surety bond "to assure the respondents faithful performance of this Court's Order and to protect the community" before it would be permitted to operate "any type of business" at the location. I-65 Realty Partners has appealed.

---

[1]*State v. Pendergrass*, 795 S.W.2d 150 (Tenn. Crim. App. 1989) (affirming six convictions for possessing obscene material with intent to distribute); *Pendergrass v. State*, No. 03C01-9403-CR-00086, 1995 WL 621121 (Tenn. Crim. App. Oct. 23, 1995), *perm. app. denied* (Tenn. Apr. 1, 1996) (affirming the denial of Mr. Pendergrass's petition for post-conviction relief).

## II.

The sole issue I-65 Realty Partners has raised on appeal is the trial court's authority to condition the continued use of real property on the posting of a bond to assure continued compliance with an abatement order. Specifically, I-65 Realty Partners asserts that the trial court exceeded its statutory authority by requiring it to post a bond when there was no evidence that it participated or acquiesced in or had knowledge of the illegal activities that had occurred before I-65 Realty Partners acquired the property. We agree.

### A.

Tennessee's public nuisance statutes have remained largely unchanged since their enactment in 1913.[2] They define the conduct considered to be a public nuisance, set out a judicial procedure for abating public nuisances, and provide remedies for violating abatement orders. These statutes represent the Tennessee General Assembly's effort to balance the rights of private property owners with the common rights of the community.

The statutory remedies for abating a nuisance distinguish between temporary and permanent abatement orders and between property owners and their tenants or lessees. The courts may issue a temporary injunction prohibiting the continuation of a nuisance pending a final hearing. Tenn. Code Ann. § 29-3-105(a). They may also temporarily close the building or premises where the nuisance is being maintained, Tenn. Code Ann. § 29-3-105(a), and this "padlock" order, while it is in effect, prevents all use of the property by the owner, the lessee, or anyone else.

The courts may also permanently enjoin both the property owner and its lessee from maintaining a nuisance at the particular location where the nuisance had been maintained. With regard to property owners, Tenn. Code Ann. § 29-3-110 empowers the courts to "perpetually . . . [forbid] the owner of the building from permitting or suffering the same to be done in such building." In addition, while the courts may confiscate and dispose of any fixtures or personal property used to maintain the nuisance, Tenn. Code Ann. § 29-3-110, the public nuisance statutes do not explicitly permit the courts to restrict a property owner's future lawful use of its property. A permanent abatement order under Tenn. Code Ann. § 29-3-110 does nothing more than require the property owner to see to it that the premises do not become a public nuisance in the future. *State v. James*, 177 Tenn. 21, 28, 145 S.W.2d 783, 786 (1940); *State ex rel. Webster v. Daugherty*, 530 S.W.2d 81, 86 (Tenn. Ct. App. 1995).

Violations of abatement orders may be punished in two ways. First, a willful violation of a temporary or permanent abatement order is a Class C misdemeanor. Tenn. Code Ann. § 29-3-111. Second, the courts may use their civil and criminal contempt powers against persons who violate

---

[2]Act of Oct. 17, 1913, ch. 2, 1913 Tenn. Pub. Acts 665 (2d Extraordinary Sess.) codified at Tenn. Code Ann. §§ 29-3-101 through 29-3-111 (2000 & Supp. 2004).

abatement orders. *Barrowman v. State ex rel. Evans*, 214 Tenn. 408, 413, 381 S.W.2d 251, 253 (1964); *Underwood v. State*, 187 Tenn. 530, 531-32, 216 S.W.2d 26, 27 (1948).

## B.

The trial court's abatement order in this case tracks Tenn. Code Ann. § 29-3-110. It permanently enjoins the operators of the Lipstick Modeling Agency and I-65 Realty Partners from operating any type of "adult business"[3] at the location where the illegal sexual activities were occurring. However, the order also goes beyond Tenn. Code Ann. § 29-3-110 by providing that:

> if the respondents wish to open any type of business at the above location that a bond in the amount of $20,000 is necessary and reasonable to assure the respondents [sic] faithful performance of this Court's Order and to protect the community. The Court is of the opinion that the surety bond is necessary due to the blatant illegal activity which was allowed to take place on the premises owned by the respondents and the bond requirement in no way restricts the respondent from operating a legal business.

Contrary to the trial court's belief that the bond requirement does not restrict I-65 Realty Partners' lawful use of its property, the requirement of posting a bond effectively deprives I-65 Realty Partners of all economically beneficial use of its property unless it posts an acceptable $20,000 bond and then maintains this bond as long as it owns the property.

We have found no precedent in Tennessee for a bond of this sort. Perhaps it is patterned after the bonds explicitly authorized by other states' nuisance statutes. Many other states authorize their courts to prevent for as long as one year all use of real property where a public nuisance has been maintained. However, these statutes also permit the courts to dissolve the closure order and return the property to its owner if the owner pays the costs of the nuisance proceeding and posts a bond in a statutorily defined amount conditioned on the owner's agreement to abate the nuisance and to prevent other nuisances from being established on the property for a period of one year.[4] These statutes are based on the equitable principle that courts may, in proper circumstances, substitute a

---

[3] While Nashville's ordinances do not define "adult business," Metropolitan Government of Nashville and Davidson County, Tennessee Code § 17.04.060B defines "adult entertainment" as:

> any 'adult bookstore,' 'adult video store,' 'adult theatre,' 'adult nightclub,' or any commercial establishment which for a fee or incidentally to another service, presents material or exhibitions distinguished or characterized by an emphasis on matter depicting, describing or relating to 'specified sexual activities' or 'specified anatomical areas,' as defined below for observation by patrons therein.

[4] *See, e.g.*, Ala. Code § 6-5-151(a) (1975 & Supp. 2004); Conn. Gen. Stat. § 19a-350 (1958); Ga. Code Ann. § 41-3-9(a); Ky. Stat. Ann. § 233.120 (2002); Mich. Comp. Laws Ann. § 600.3840(1) (2000); Minn. Stat. Ann. § 617.39 (2003); Miss. Code Ann. § 95-3-11 (1972); N. C. Gen. State. § 19-7 (2003); Ohio Rev. Code Ann. § 3767.06(A) (1998 & Supp. 2005); S. C. Code Ann. § 15-43-110 (1976); Tex. Code Ann. Civil Practice and Remedies § 125.002(b) (2004).

bond for an injunction when continuing the injunction would pose a disproportionate hardship on the enjoined party. *See Snow v. Duxstad*, 147 P. 174, 177 (Wyo. 1915); 2 JAMES L. HIGH, A TREATISE ON THE LAW OF INJUNCTIONS § 1497 (4th ed. 1905).

Property owners have the right to use their property in any lawful manner. *State ex rel. Webster v. Daugherty*, 530 S.W.2d at 86. Accordingly, Tennessee's public policy disfavors interfering with private property owners' use of their property. *See General Bancshares, Inc. v. Volunteer Bank & Trust*, 44 S.W.3d 536, 540 (Tenn. Ct. App. 2000). However, despite public policy favoring unrestricted use of private property, the State may restrict or prevent a private property owner's use of property (1) if the property is being used in a way that interferes with the rights of others, *State ex rel. Astor v. Schlitz Brewery Co.*, 104 Tenn. 715, 746, 59 S.W. 1033, 1040 (1900), (2) if the property owner has used the property illegally or to facilitate violations of the law, *see, e.g.*, Tenn. Code Ann. § 53-11-451 (1999) (forfeiture of property used to facilitate criminal conduct involving controlled substances), or (3) if the property itself was derived from criminal activity, *see* Tenn. Code Ann. § 39-12-206 (2003) (forfeiture of property derived from criminal activity).

The State undoubtedly has a paramount interest in eliminating criminal sexual activity. Because property owners have a duty to prevent their property from becoming a public nuisance, *State v. James*, 177 Tenn. at 28-29, 145 S.W.2d at 786; *State ex rel. Webster v. Daugherty*, 530 S.W.2d at 86, it may very well be that abatement under the nuisance statutes, including the deprivation of an owner's right to use property, is the only effective recourse against owners who permit unlawful sexual activity to occur on their property.[5] However, it is the General Assembly's prerogative, not the courts', to make this determination. *Commonwealth v. Croatan Books, Inc.*, 323 S.E.2d 86, 89-90 (Va. 1984).

The trial court's abatement order in this case goes well beyond Tenn. Code Ann. § 29-3-110. Despite the City's failure to present any evidence that I-65 Realty Partners was involved with the illegal sexual activity that had occurred on its property or even that it knew or should have known that the activity was taking place, the order deprives I-65 Realty Partners of all use of its property until it files an open-ended bond. By its sheer breadth, the bond requirement amounts to a taking of I-65's property without due process of law in violation of both U. S. Const. amend 5 and Tenn. Const. art. I, § 8. It also runs afoul of the principle that equity should not be employed to forestall the commission of a crime. *State v. Robertson*, 313 P.2d 342, 345 (N.M. 1957); *see also Caldwell v. Spicer & McEvoy*, 159 Tenn. 465, 467, 19 S.W.2d 238, 239 (1929); *State v. Anderson*, 6 Tenn. Civ. App. (Higgins) 1, 8 (1915) (holding that injunctions cannot be used to prevent criminal acts). Accordingly, we have concluded that the trial court erred by requiring I-65 Realty Partners to file a bond before it will be permitted to use its real property in a lawful manner.

---

[5]Other state courts have limited the application of their statutes permitting the temporary closure of real property to property owners who had actual knowledge of the illegal activities occurring on their property or who, by the exercise of reasonable diligence, would have discovered the illegal activities. *Hvamstad v. Suhler*, 727 F. Supp. 511, 516 (D. Minn. 1989); *State ex rel. Pizza v. Razcallah*, 702 N.E.2d 81, 88 (Ohio 1998); *Barker v. Palmer*, 8 S.E.2d 610, 613 (N.C. 1940).

## III.

We affirm the trial court's abatement order as modified herein and remand the case to the trial court with directions to enter a revised order omitting the bond requirement and for whatever other proceedings consistent with this opinion may be required.  We tax the costs of this appeal to the Metropolitan Government of Nashville and Davidson County, Tennessee.

_____
WILLIAM C. KOCH, JR., P.J., M.S.