**STATE of TENNESSEE ex rel. John W. PIEROTTI, Plaintiff,**

v.

**A PARCEL OF REAL PROPERTY MUNICIPALLY KNOWN AS 777 N. WHITE STATION ROAD, MEMPHIS, TENNESSEE, et al., Defendants.**

No. 96–2728–M1/V.

United States District Court,
W.D. Tennessee,
Western Division.

Aug. 19, 1996.

Larry E. Parrish, Amy P. Weirich, Jennifer S. Nichols, Attorney General's Office, Memphis, TN, for Tennessee, State of, ex rel. John W. Pierotti.

William D. Massey, William D. Massey & Associates, Memphis, TN, E.E. Edwards, III, Edwards & Simmons, Nashville, TN, Rex L. Brasher, Jr., Brown Brasher & Smith, Memphis, TN, John E. Herbison, Nashville, TN, for 777 N. White Station Road, Memphis, TN.

Rex L. Brasher, Jr., Brown Brasher & Smith, Memphis, TN, for Entertainment U.S.A. of Tennessee, Inc., Steven Craig Cooper.

## ORDER GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINTS AND REMANDING CASE TO STATE COURT

McCALLA, District Judge.

Before the Court are motions by plaintiff to amend the complaints [1] and to remand this case to state court. On July 23, 1996, the Court heard oral arguments on the remand issue. On July 25, 1996, plaintiff filed a motion to amend the complaints, seeking to withdraw all federal claims in this matter. On July 25, 1996 and August 2, 1996, the Court heard oral argument on the remand and amendment issues. The plaintiff and defendants have submitted extensive memoranda presenting their respective positions.[2]

1. On July 25, 1996, the Court consolidated the eight complaints under Case No. 96–2728–M1/V. The cases were originally removed to federal court under three separate case numbers. Case No. 96–2728 M1/V included six separate complaints, each against a distinct defendant; Case Nos. 96–2729 M1/V and 96–2749 M1/V each involved only one complaint and defendant. On July 19, 1996, for administrative efficiency, the Court severed Case No. 96–2728–M1/V into six independent cases, each involving separate pieces of property. On July 25, 1996, the Court consolidated all eight cases, so that Case No. 96–2728 M1/V now includes eight complaints against eight distinct properties. See infra n. 3.

2. Plaintiff has filed the following documents concerning the remand issue: (1) Motion of Plaintiff to Remand to Chancery Court, filed July 18, 1996; (2) Motion of Plaintiff to Remand to Chancery Court, filed July 19, 1996 (this motion is distinct from the prior July 18, 1996 motion); (3) Plaintiff's Reply to Defendant's Supplemental Response to Plaintiff's Motion to Remand, filed July 24, 1996. Accompanying this Reply, plaintiff also filed on July 24, 1996, a Motion for Leave To File Supplemental Memorandum of Law in Reply to Defendants' Supplemental Memorandum of Law in Response to Plaintiff's Motion To Remand. This motion is GRANTED, and the supplemental motion, to which it refers, is listed above as motion "3" and has been reviewed by the Court.

Defendants have filed the following documents concerning the remand issue: (1) Response in Opposition to Motion To Remand and Memorandum in Support Thereof (Defs.' Response 1), filed July 19, 1996 (filed under Case No. 96–2728–M1/V and another virtually identical motion filed under Case No. 96–2729–M1/V); (2) Supplemental Response to Motion to Remand (Defs.' Response 2), filed July 22, 1996; and (3) Supplement to Response to Motion to Remand and Memorandum in Support Thereof (Defs.' Response 3), filed July 23, 1996; (4) Response on Behalf of Defendants Steven Craig Cooper, 3918 Winchester, Club Tiffany, Inc., 777 White Station, Southern Entertainment Management Co., Inc., 3659 South Mendenhall and Night Moves of Memphis, Inc. in Opposition to Plaintiff's Motion to Remand and Response to Plaintiff's Motions for Leave to Amend Complaints (Defs.' Response 4), filed July 31, 1996; (5) Memorandum on Behalf of Defendant 1575 East Brooks Road in Opposition to Plaintiff's Motion to Remand and Response to Plaintiff's Motions for Leave to Amend Complaint (Defs.' Response 5), filed July 31, 1996; and (6) Response on Behalf of Steven Craig Cooper, 3918 Winchester, 3959 S. Mendenhall, 777 N. White Station, and Related De-

For the reasons stated below, the Court GRANTS plaintiff's second motion to amend, and GRANTS plaintiff's motions to remand.

On July 11, 1996, plaintiff filed eight complaints against defendants (each complaint involved a distinct adult entertainment club) in the Chancery Court of Shelby County, Tennessee.[3] Entitled, "Complaint for Declaratory Judgments," the complaints raise a number of state law claims, and a smaller number of federal claims.[4] Also on July 11, 1996, the State obtained Temporary Restraining Orders (TROs) against the eight defendants.[5] On July 15, 1996, defendants removed the complaints to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

On July 25, 1996, plaintiff filed a motion to amend its complaints and a second amendment to complaints,[6] seeking to withdraw all federal claims in this matter. The motion and amendment were faxed to this Court at approximately 2:25 p.m. In relevant part, plaintiff states in the motion:

> For further cause, the State would show that, in spite of the fact that the State firmly believes that the law provides the State the right to proceed with its complaint in Chancery Court without the amendment for which leave is hereby sought, the exigencies of the situation and the urgency of proceeding without further delay in Chancery Court (specifically, that the Temporary Restraining Order expires tomorrow afternoon, July 26, 1996) require the suggested amendment in order to eliminate issues relative to whether or not this court has jurisdiction because the allegations in the complaint raise a federal question.
>
> For further cause, the State would show that the exigencies and urgency are such that, respectfully, the State requests this court to treat this motion as an emergency and to rule on it without further delay and without a hearing, and thereafter, and before the close of business today, remand this cause of action to the Chancery Court of Shelby County.

Pl.'s First Mot. for Leave to Am.Compl., p. 2. Thus, plaintiff sought for the Court to respond to its motion to withdraw all federal claims by immediately remanding the case, without conducting a hearing or providing defendants with an opportunity to be heard, and without consideration of the TRO, subpoena and other issues pending in this case.

That afternoon, at 4:30 p.m., the Court held an emergency hearing concerning the motion to amend and its impact on the

---

fendants and on Behalf of 1741 E. Brooks Road, and King of Clubs, Inc. (Defs.' Response 6), filed July 31, 1996; (7) Second Supplement to Response to Motion To Remand and Memorandum in Support Thereof (Defs.' Response 7), filed August 16, 1996.

**3.** The complaints involve predominantly identical charges, but apply to the following distinct businesses, all located in Memphis, Tennessee: (1) 777 N. White Station Road ("Gold Club"); (2) 1575 E. Brooks Road ("Babes"); (3) 3880 Lamar ("Valentine's"); (4) 3918 Winchester ("Menz Club"); (5) 2514 Mt. Moriah ("Platinum Plus"); (6) 3659 South Mendenhall ("Tiffany's"); (7) 1741 E. Brooks Road ("King of Clubs"); and (8) 2882 Lamb Place ("Ebony and Lace").

**4.** In Plaintiff's Reply to Defendants' Supplemental Response to Plaintiff's Motion to Remand (Pl.'s Reply), plaintiff sets forth the number of counts found in each of the eight complaints and their respective distribution of state and federal claims:

1. *State v. 777 N. White Station, et al.:* 21 state claims; 7 federal claims.
2. *State v. 1741 East Brooks, et al.:* 15 state claims; 3 federal claims.
3. *State v. 3918 Winchester, et al.:* 18 state claims; 5 federal claims.
4. *State v. 2882 Lamb Place, et al.:* 18 state claims; 5 federal claims.
5. *State v. 3880 Lamar, et al.:* 15 state claims; 3 federal claims.
6. *State v. 3659 S. Mendenhall, et al.:* 21 state claims; 7 federal claims.
7. *State v. 1575 E. Brooks et al.:* 18 state claims; 5 federal claims.
8. *State v. 2514 Mt. Moriah, et al.:* 20 state claims; 3 federal claims.
Pl.'s Reply, p. 10–11.

**5.** Upon obtaining the eight ex parte TROs, the agents of the State of Tennessee entered the eight businesses, and another unnamed business run by defendant Steve Cooper at 995 S. Yates. The agents took control of the properties, including changing all locks and barring all access to employees.

**6.** On July 19, 1996, plaintiff filed its first amendment (an amendment of right) to the complaint, altering some language respecting its state law claims. Because plaintiff seeks to amend its complaint for the second time, it must bring a motion to do so before this Court, pursuant to Rule 15 of the Federal Rules of Civil Procedure.

Court's jurisdiction in this matter. None of the eight defense attorneys had received from plaintiff a copy of the motion to amend by the time of the July 25, 1996 hearing. The Court distributed copies to the defense, directed the State to read its motion and amendment in open court to give notice, knowledge of the motion's content, and an opportunity to respond, to the Nashville based defense attorneys, who participated in the hearing by telephone.[7] After the parties presented preliminary arguments on the motions to amend and remand, the Court directed the parties to submit, no later than July 31, 1996, final memoranda on those issues.[8] On July 29, 1996, pursuant to direction by the Court, plaintiff filed an amended complaint that incorporated all changes resulting from its motion to amend the complaints. Also on July 29, 1996, plaintiff filed a revised motion for leave to amend the complaints. A final hearing on the motion to amend, the second amendment and the remand issue was held on August 2, 1996.[9]

*REMOVAL TO FEDERAL DISTRICT COURT, Prior To Plaintiff's Motion To Withdraw All Federal Claims*

Plaintiff's complaints for declaratory judgments, as structured before the second amendment, bring a series of claims, most significantly, under the Tennessee Nuisance Act, T.C.A. § 29–3–101 *et seq.*, forfeiture provisions, T.C.A. § 29–25–101 *et seq.*, dissolution provisions, T.C.A. § 48–245–101 *et seq.*, the Racketeer Influence and Corrupt Organization Act (RICO), 18 U.S.C. §§ 1961 *et seq.*, and 18 U.S.C. §§ 841, 844 and 2421. The state nuisance counts seek direction from the court on questions such as, whether the activity alleged in the clubs constitutes a nuisance under Tennessee law, and if so, whether the common law police power of the State of Tennessee can abate or seize the nuisance. The RICO counts charge that the activity

that the State alleges constitutes a nuisance, viewed in total, also constitutes a violation of federal law under RICO.

Article III, § 2 of the United States Constitution provides in part that Federal Courts have jurisdiction over "all cases, in law and equity, arising under this constitution, the laws of the United States, and ... between citizens of different states."

A civil action that is filed in state court may be removed if the federal district court has original jurisdiction; thus, removal may be invoked whenever there is diversity jurisdiction or a federal question.[10] 28 U.S.C. §§ 1331, 1332, 1441(a) and 1441(b). On July 15, defendants filed a notice of removal to federal court, pursuant to 28 U.S.C. §§ 1441 and 1446. Section 1446 sets forth the procedures for removal. Section 1441(a) states, in pertinent part,

(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

Both state and federal courts possess concurrent jurisdiction over RICO claims. "The mere fact that concurrent jurisdiction exists under this statute does not prohibit a defendant from properly removing a case to federal court so long as the main requirement under the federal removal statute, 28 U.S.C. § 1441(a) is met; namely, that the district court have original jurisdiction over the matter, regardless of which court the

---

7. Nashville is approximately 200 miles from Memphis. Thus, given that plaintiff filed its motion in the afternoon, the two Nashville based attorneys could not make a personal appearance in this Court at the 4:30 p.m. hearing.

8. Also at the July 25, 1996 hearing, the Court found that the eight Temporary Restraining Orders, issued by the Chancery Court on July 1, 1996, and directed against defendant properties, expired on July 25, 1996, pursuant to Rule 65 of the Tennessee Rules of Civil Procedure and Rule 65 of the Federal Rules of Civil Procedure. *See* this Court's Order, docketed July 25, 1996.

9. On July 25, 1996, the parties presented only limited argument on the amendment and remand issues. Upon defendants' request for additional time to review the State's motion and amendment, and in light of the lack of notice they received from plaintiff, the Court set a follow-up hearing for July 26, 1996. By stipulation of the parties, that date was extended to August 2, 1996.

10. In the present case, no diversity issues exist.

complainant initiated the action first." *Spencer v. South Florida Water Management,* 657 F.Supp. 66, 67 (S.D.Fla.1986), citing *DiAntonio v. Pennsylvania State University,* 455 F.Supp. 510, 512 (M.D.Pa.1978).

■ In the present matter, the RICO claim may be removed under the federal question statute. The remaining question is whether the state law claims are appropriately removed under the doctrine of supplemental jurisdiction.

■ State law claims that are related to a federal question claim may also be removed under the doctrine of supplemental jurisdiction (formerly called 'pendent' jurisdiction). 28 U.S.C. § 1367(a).[11] "A federal court has jurisdiction over an entire action, including state law claims, whenever the federal law and state law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 349, 108 S.Ct. 614, 618, 98 L.Ed.2d 720 (1988), quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The doctrine of pendent jurisdiction is fully applicable to removal in federal question cases; it is a doctrine of discretion, not of plaintiff's right. *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139. This discretion to invoke supplemental jurisdiction "is designed to enable courts to handle cases involving state law claims in a way that will best accommodate the values of economy, convenience, fairness and comity." *Cohill,* 484 U.S. at 351, 108 S.Ct. at 619.

■ One of the primary considerations for a Court in deciding whether to invoke supplemental jurisdiction over the state law claims is the degree to which the state law claims are intertwined with the federal claim.[12] In the present case, the state law claims form the basis for the federal RICO claims.[13] Thus, the Court properly has jurisdiction over the state and federal claims.[14]

## MOTION TO AMEND THE COMPLAINTS, To Withdraw All Federal Claims

■ Having amended the complaints once by right, plaintiff brings its motion to amend complaints, pursuant to Rule 15 of the Federal Rules of Civil Procedure. While Rule 15(a) requires that plaintiff apply to the Court when amending a complaint for the second time, the Federal Rules of Civil Pro-

11. The supplemental jurisdiction statute, 28 U.S.C. § 1367(a), codified judge-made principles of pendent jurisdiction.

12. Before filing the amendment to remove all federal claims, plaintiff made the following arguments in support of remand: (1) the complaints present an in rem action; (2) the cases seek declaratory judgment and no remedial relief; (3) constitutional issues raised by defendants are raised only in defense; (4) only one federal claim (RICO) is included in the complaints, whereas numerous state law claims are included; and (5) the Chancery Court has concurrent and co-equal jurisdiction over RICO claims.

13. While plaintiff attempts to portray the RICO counts as peripheral to the state counts, it is clear that the RICO charge is central to this case, as presented by the original complaints. Further, the original complaints rest the RICO charge on the violations alleged in the state charges, thus arguably the state charges operate to provide the necessary elements for the RICO charge.

14. Plaintiff argued that the entire case should be remanded, pursuant to 28 U.S.C. § 1441(c). Section 1441(c) provides:

Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire cause may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which state law predominates.
28 U.S.C. § 1441(c).
Section 1441(c) is not applicable to suits involving pendent claims, because pendent claims are not "separate and independent" within the meaning of the removal statute. *Cohill,* 484 U.S. at 354, 108 S.Ct. at 621. "[A] 'separate and independent claim or cause of action' arises from a set of facts that are independent and distinct from those facts which support other claims in the complaint, and results in a wrong that is separate and district from the other ills about which the plaintiff complains." *Williams v. Huron Valley School District,* 858 F.Supp. 97, 99 (E.D.Mich.1994). As the same basic facts underlying the state claims support the RICO claim of "predicate acts" by the defendant, the state and federal claims were so intertwined that supplemental jurisdiction is appropriate. *Id.* at 100.

cedure require that motions to amend be liberally granted in the interest of justice.[15]

■ The most important factor in determining whether leave to amend the complaints should be granted is whether the opposing party will be prejudiced if the movant is permitted to alter his pleadings. Defendants acknowledge that they are unlikely to be prejudiced by the proposed amendments, as the amendments impose no additional facts or legal theories. Defs.' Response 4, at 2.

The remaining consideration for the Court with respect to the motion to amend is whether an amendment is appropriate when it is evident, from the timing and surrounding circumstances of the motion's filing, and from plaintiff's own statement regarding its reasons for amendment,[16] that plaintiff seeks to amend the complaints solely in order to defeat federal jurisdiction in this matter.[17]

In *Kimsey v. Snap–On Tools*, 752 F.Supp. 693 (W.D.N.C.1990), the plaintiff brought state and federal claims in state court, and defendants removed based on the existing RICO claims. Three weeks after removal, the plaintiff sought to amend the complaint under Rule 15(a) to eliminate the RICO claims. Defendant Snap–On Tools argued that remand is not appropriate where a plaintiff attempts to avoid federal jurisdiction by amending his complaint. The *Kimsey* court held,

> Plaintiffs state that they no longer wish to pursue federal RICO claims. The Court can envision a host of reasons for such a decision including the expense and com-

plexity of pursuing RICO claims. While Plaintiffs may be attempting to avoid federal jurisdiction by amending the complaint ... such a reason 'does not diminish the right of these plaintiffs to set the tone of their case by alleging what they choose.'

752 F.Supp. at 694, quoting *McGann v. Mungo*, 578 F.Supp. 1413, 1415 (D.S.C.1982). Similarly, this Court finds that, although plaintiff's aim in withdrawing the RICO claim is to return to the state forum for the adjudication of this case, plaintiff is allowed to determine what claims it brings against defendants and thus, is entitled to make such an amendment.

*REMOVAL AND REMAND CONSIDERATIONS, Subsequent To The Dismissal Of The Federal Claims From The Complaints*

■ The defendant's right to remove a case from state to federal court depends on the plaintiff's complaint as filed in state court; if that complaint states a claim that is removable, removal is not per se defeated by plaintiff's subsequent filing of a new complaint deleting the federal claim. *Hammond v. Terminal Railroad Association of St. Louis*, 848 F.2d 95 (7th Cir.1988). However, the issue of whether supplemental jurisdiction is properly assumed is one that remains open throughout the litigation. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

■ When a federal district court has dismissed all claims over which it had original jurisdiction, it may decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c)(3).[18]

---

15. Rule 15(a) provides:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been place upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires ...
Fed.R.Civ.P. 15(a).

16. *See supra* p. 1300.

17. *See infra* p. 1303, discussing the impact of the second amendment. The amendment does not *require* that the district court remand the case; however, the amendment does change the Court's considerations regarding the remand issue.

18. Section 1367(c) provides in full:
The district court may decline to exercise supplemental jurisdiction over a claim ... if:
(1) the claim raises a novel or complex issue of State law,

While the elimination of all federal claims gives the district court "a powerful reason to choose not to continue to exercise jurisdiction," the district court's decision to retain, dismiss, or remand the remaining supplemental claims is discretionary. *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). In making this decision, the federal court should take into consideration convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity and considerations of judicial economy. *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *Shanaghan v. Cahill,* 58 F.3d 106 (4th Cir.1995); *Cohill,* 484 U.S. at 350, 108 S.Ct. at 619; *Timm v. The Mead Corp.,* 32 F.3d 273, 276 (7th Cir.1994).[19]

■ "The doctrine of supplemental jurisdiction thus is a doctrine of flexibility, designed to allow court to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Shanaghan,* 58 F.3d at 110, quoting *Cohill,* 484 U.S. at 350, 108 S.Ct. at 619. "That the jurisdictional hook is eliminated before trial at best only preliminarily informs the balance; the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources can and should make the difference in a particular case." *Mead,* 32 F.3d at 277.

*Convenience*

■ As Chancery and Federal Court are both located in the same judicial district as the parties to this action, considerations of convenience do not weigh in favor of jurisdic-

tion in either forum. Defendants argue that "the broader and less cumbersome subpoena power of the federal courts will make it easier for plaintiffs to obtain the testimony of these potential witnesses."[20] Defs.' Response 6, at 6. Defendants do not explain how federal subpoena power is less cumbersome, or in what manner state subpoena power has posed difficulties for plaintiff in obtaining witness testimony. Of course, the State makes no argument that federal court is a more convenient forum for reasons of subpoena power, witness testimony, or any other reason.

*Judicial Economy*

In *Gibbs,* the United States Supreme Court indicated that in cases where "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed subsequently as well." 383 U.S. at 726, 86 S.Ct. at 1139. Later cases have modified the *Gibbs* position, favoring federal court discretion to decide whether to proceed with state claims even when no trial has commenced. *See Rosado v. Wyman,* 397 U.S. 397, 404, 90 S.Ct. 1207, 1213, 25 L.Ed.2d 442 (1970); *Silva v. Vowell,* 621 F.2d 640 (5th Cir.1980); *McGann v. Mungo,* 578 F.Supp. 1413 (D.S.C.1982); *H.J. Inc. v. Northwestern Bell Telephone Company,* 648 F.Supp. 419 (D.Minn.1986).

■ In the majority of cases where the proceedings in federal court are still in the early stages, courts have generally dismissed or remanded the state claims after the elimi-

---

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

19. In *Mead,* the Seventh Circuit retreated from an earlier decision that emphasized dismissal or remand rather than court discretion when deciding whether to retain a case with only state claims remaining. In *Wentzka v. Gellman,* 991 F.2d 423, 425 (7th Cir.1993), the court found that jurisdiction over the state claims should be retained only in the following circumstances: (1)

a federal defense to a state claim; (2) the statute of limitations on filing the pendent claims in state court has expired; (3) some other basis for federal jurisdiction exists. The Seventh Circuit later expanded the district court discretion to remand in cases involving supplemental claims, emphasizing that the court's decision should turn on considerations of judicial economy, convenience, fairness and comity. *Mead,* 32 F.3d at 276; *Markey v. City of Chicago,* 1995 WL 127791, *3 (N.D.Ill.1995).

20. By contrast, defendants 1575 East Brooks Road and 777 North White Station concede that convenience is a neutral factor. Defs.' Response 5, at 6.

nation of all federal claims, on the ground that there has been no substantial commitment of federal judicial resources. *See, e.g., Briggs v. American Air Filter Co.,* 455 F.Supp. 179 (N.D.Ga.1978); *Houlihan v. Anderson–Stokes, Inc.,* 434 F.Supp. 1324, 1329 (D.D.C.1977); *H.J. Inc.,* 648 F.Supp. at 429; *Mead,* 32 F.3d at 277 (stating, "[e]xactly when before trial the federal claim is eliminated, however, is relevant. For example, dismissal at the pleading stage usually counsels strongly in favor of relinquishing jurisdiction because at that point in a case 'judicial resources' typically have not been heavily tapped"). By contrast, "when substantial judicial resources have already been committed so that sending the case to another court will cause a substantial duplication of effort, a district court should strongly consider retaining jurisdiction." *Markey v. City of Chicago,* 1995 WL 127791, *1 (N.D.Ill.), quoting *Moses v. County of Kenosha,* 826 F.2d 708, 711 (7th Cir.1987). Thus, with regard to judicial economy, two considerations exist. First, whether the federal court has spent a substantial amount of time on the state law claim, and second, how much time and resources a state court must expend on work already completed by the federal court. *Id.*

Defendants argue remand would not serve the interests of judicial economy because a significant amount of time and energy has been expended in federal court by all parties and the Court since the removal of this case. As removal of this case occurred four days after the filing of the case in state court, the majority of legal proceedings and submittals have taken place in federal court. While proceedings concerning the TROs did occur in Chancery court, the TROs are, by definition, temporary, and are no longer in effect; therefore, any time and energy spent in obtaining them is no longer relevant to this case.

Nonetheless, federal judicial resources were not used for the consideration of the substantive claims in this matter. The disparate expenditure of judicial resources in state and federal court primarily involve the removal and remand issues in this case. Other expenditure has involved such issues as TROs, subpoenas, and deposition testimony.

Any argument on the Tennessee Nuisance Statute was limited to a discussion of whether judicial integrity required the federal court to protect a prior district court's ruling concerning the statute. It did concern the substance of the claims against defendants, and involved no application of the nuisance law to the particular facts in this case. All factual discussions centered on the enforcement of the TROs, which no longer have any application to this case. Thus, federal retention of this case does not serve judicial economy.

By contrast, judicial economy "will be served by the narrowing of issues which results from plaintiff's abandonment of a substantial federal claim. In the same way, judicial economy will be served [if] this court will no longer be burdened with a state-law case." *Loutfy v. R.R. Donnelley & Sons, Co.,* 148 F.R.D. 599, 603 (N.D.Ill.1993).

*Comity*

The notion of 'comity' involves the "proper respect for state functions,"; "what the concept does represent is a system in which there is sensitivity to the legitimate interests of both State and National Government, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activity of the States." *Pennzoil Company v. Texaco, Inc.,* 481 U.S. 1, 10, 107 S.Ct. 1519, 1525–26, 95 L.Ed.2d 1 (1987).

Defendants maintain that federal jurisdiction over this case will not deprive the parties of rights secured by the local law, as the district court is bound to apply state law principles to the state law claims. Defs.' Response 2, at 8. While the federal court would certainly be bound by state law protections when considering the state law claims in this case, comity concerns extend beyond the absence of harm to a party, and focus instead on the deference due to a state court when state law claims are at issue.

"When difficult and unsettled state law issues are not implicated by the pendent claims, it is entirely acceptable under the

discretionary principle for a federal court to decide those claims even after dismissing the main claim." *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir. 1993); *Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1285 n. 14 (3d Cir. 1993); *Mead,* 32 F.3d at 277. However, when the state law issues are complicated, or state law is unclear or in the process of evolving, comity considerations may weigh toward remand of the state law claims.

■ Federal courts should avoid making decisions of state law when few or no federal issues remain, and no affirmative need for federal jurisdiction exists. *See e.g., Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law"); *Girard v. 94th St. and Fifth Ave. Corp.,* 530 F.2d 66, 72 (2d Cir.1976), *cert. denied,* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976); *Briggs,* 455 F.Supp. at 182 ("[B]ecause resolution of the invasion of privacy claims necessarily involves novel questions of Georgia law in the area of privacy rights, the court believes that remand is particularly appropriate.... [citations omitted] ... As a matter of comity in furtherance of our federalism, federal courts should be reluctant to make needless decisions of state law"); *Snap–On Tools,* 752 F.Supp. at 695 (finding that, because the issues remaining after dismissal of the federal claims all involve state questions between residents of North Carolina, the interests of justice would be best served by the matters being remanded to the appropriate state courts); *Wright v. Associated Ins. Co. Inc.,* 29 F.3d 1244, 1251–52 (7th Cir.1994). *See Kazor v. General Motors Corp.,* 585 F.Supp. 621 (E.D.Mich.1984) (finding that retention of supplemental jurisdiction over a claim based on Michigan law was inappropriate, considering no significant expenditures of judicial resources were made, and remand to state court would facilitate a more definitive reading of state law inasmuch as there was no substantial amount of Michigan authority interpreting applicable provisions of the relevant state law).

■ In the present case, plaintiff's complaints, original and amended, seek only declaratory judgments. Plaintiff does not currently retain any control over defendants' businesses. Although plaintiff's actions with regard to the TROs indicate that plaintiff may seek to close or abate the businesses in the future, plaintiff does not *presently* seek any relief in the form of closure, seizure, or other physical control over defendants' businesses. Any consideration regarding the State's future behavior is entirely speculative. An action for declaratory judgment is not an action for relief, but rather is an action asking the court to answer questions regarding the potential application of law to a given set of facts. It is particularly appropriate that a state court is given the opportunity to interpret the application of its own laws, and to resolve any unsettled questions concerning those laws.

*Underlying Issues of Federal Policy*

Defendants argue that, even without the RICO claims, the Amended Complaint presents important constitutional issues. Specifically, defendants argue First Amendment rights and judicial integrity are implicated by the State's application of the Tennessee Nuisance Statute, in light of the three judge federal court panel decision in *Airways Theater, Inc. v. Canale,* 366 F.Supp. 343 (W.D.Tenn.1973). Defendant also argues that numerous First Amendment issues are at issue in this case because "the state is seeking to close a business premises where constitutionally protected activities are conducted." Defs.' Response 2, at 4. Defendant maintains that the existence of these federal issues renders the federal courts "more familiar and better prepared than the Chancery Court." *Id.* at 6.

In *Airways,* the court found that the Tennessee Nuisance Statute was unconstitutional with respect to overbroad language concerning lewdness and obscenity. As a result of this decision, the unconstitutional provisions were struck. In *State ex rel Webster v. Daugherty,* 530 S.W.2d 81 (Tenn.App.1975), the court applied the statute as amended, stating:

The order of that Court [Airways] was filed on January 18, 1974. The issue there

seemed to be whether the references to lewdness and obscenity as used in the statute were unconstitutionally overbroad. The Court held those references were overbroad and struck various references to lewdness and obscenity from the statute, and concluded the statute could constitutionally read as follows:

(c) 'Nuisance' means that which is declared to be such by other statutes and in additional thereto means any place in or upon which ... assignation, prostitution, unlawful sale of any regulated legend drug, narcotic or other controlled substance, unlawful gambling ... quarreling, drunkenness, fighting or breaches of the peace are carried on or permitted and personal property, contents, furniture, fixtures, equipment and stock used in or in connection with the conducting and maintaining any such place for any such purpose.

We therefore accept the statute as approved by the federal court.

530 S.W.2d at 84–85.

Defendants allege that the allegations of nuisance rely mainly upon the stricken provisions; thus to preserve the integrity of its rulings and interpret its decisions, the federal court should have jurisdiction over this matter. Further, they maintain that a subsequent 1990 amendment to the Tennessee Nuisance Statute is unconstitutional, and cite Tennessee law for the proposition that any amendment to an unconstitutional act has no validity. *See e.g., State v. Collins,* 528 S.W.2d 814, 817–18 (Tenn.1975).

Just as a Tennessee court carried forth the direction of the federal court in *Airways,* and just as Tennessee courts will not allow amendments to unconstitutional provisions, Tennessee courts are capable of addressing constitutional arguments concerning plaintiff's exercise of state law.

Defendants also contend that the State's attempts to abate, revoke occupational licenses, or to close defendants' businesses, constitute a prior restraint in violation of the First Amendment. Defs.' Response 3, at 6. In making these arguments, defendants refer to actions made by the State of Tennessee with respect to the obtaining and carrying out of the TROs in this matter. While the Court has stated in its Order, docketed July 25, 1996, that these TROs were substantially deficient, the Court also found that the issues regarding the TROs were moot. The TROs expired at midnight on July 25, 1996, and after that period, have no authority over defendants. Thus, any arguments surrounding TRO activity by plaintiff are inapplicable to the present question of whether remand is appropriate in this case. Again, plaintiff has repeatedly stated in oral argument before this Court, and in its pleadings, that it does not seek to seize, close or abate defendants' businesses; at this stage, the State seeks only declaratory judgments as to how state law can be applied against defendants.

*Fairness*

As a preliminary matter, no statute of limitations bar prevents either party from litigating the remaining claims in state court. However, other substantial questions of fairness to defendants are raised by plaintiff's actions in this case.

Defendants argue that plaintiff's second amendment to the complaints constitutes manipulative tactics in order to secure a state forum. The United States Supreme Court in *Cohill* addressed this issue:

Petitioners' concern appears to be that a plaintiff whose suit has been removed to federal court will be able to regain a state forum simply by deleting all federal law claims from the complaint and requesting that the district court remand the case.... This concern, however, hardly justifies a categorical prohibition on the remand of cases involving state law claims regardless of whether the plaintiff has attempted to manipulate the forum and regardless of the other circumstances in the case. A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case. The district courts thus can guard against forum manipulation without a blanket rule

that would prohibit the remand of all cases involving pendent state-law claims.

484 U.S. at 357, 108 S.Ct. at 622–23.

Plaintiff's conduct in the present case is a matter of concern. For the purpose of deciding the remand issue, the Court limits this inquiry to fairness to the defendants with respect to remand only, despite general fairness concerns throughout this case.[21] Plaintiff has made a series of questionable arguments supporting remand of this case. For instance, prior to its withdrawal of the RICO claims, plaintiff made the argument that it did not bring a RICO "claim" or alternatively, that any RICO count was entirely tangential to the proceedings. This argument was not plausible in light of the structure of the entire complaints, including the "predicate act" headings, and repeated use of RICO language, such as "pattern of racketeering activity," "enterprise," and "forfeiture." Further, when it moved to amend the complaints, plaintiff did so in a manner that, had the Court agreed to plaintiff's request, would have denied defendants any opportunity to respond, and denied defendants any ruling from this Court on the status of the TROs due to expire that same day, and concerning which the defendants had presented extensive argument to the Court.

No party before a court should engage in this type of tactical maneuvering. However, while the State's manipulative tactics in this case are inappropriate, they have not adversely impacted defendants' case. The Court has provided defendants with the opportunity and time to respond to plaintiff's

---

21. With regard to the TROs in this case, plaintiff argued to this Court that the fact that "seven of the eight Temporary Restraining Orders have in them a municipal address which differs from the municipal address which appears in the style of the complaint as to which the Temporary Restraining Order is attached and a municipal address different from that which appears in the body of the complaint to which it was attached" are "insubstantial typographical errors." *See* Order, docketed July 25, 1996, at 4 n. 10.

With regard to subpoena and depositions in this case, Magistrate Judge Vescovo issued an Opinion on August 12, 1996. After hearing oral arguments and considering submittals by the parties on defendants' motions for protective order and stay of discovery, Magistrate Judge Vescovo quashed the federal and state subpoenas.

As a result of the hearing and submittals, Judge Vescovo made, among others, the following findings of fact. In the Chancery proceeding, the plaintiff issued approximately 1,600 subpoenas ad testificandum bearing the names Jane Doe, John Doe and other pseudonyms. Of those subpoenas approximately 400 deposition subpoenas were served on persons on the night of July 11, 1996 or shortly thereafter. At least 300 of those persons were subpoenaed for depositions scheduled to take place on the same date and place (August 3, 1996). Judge Vescovo quashed the federal and state subpoenas.

Among her findings, Judge Vescovo ruled that plaintiff violated the Federal Rules of Civil Procedure by failing to provide proper notice of depositions as required by both the Tennessee Rules of Civil Procedure and the Federal Rules of Civil Procedure, that plaintiff issued depositions far in excess of that allowed by the Federal Rules of Civil Procedure. The Order also states in part,

M. The Court further finds that the Rules of Professional Conduct suggest that a lawyer should respect the schedule and commitments of opposing counsel, clients and the courts, therefore promoting the efficient administration of justice and public confidence in our profession. To this end a lawyer should consult opposing counsel when practical before scheduling hearings and depositions.

N. By August 3, 1996, being the date that Federal subpoenas ad testificandum were issued, Plaintiff's counsel could have consulted with defense counsel as to appropriate deposition dates and failing to do so there was no agreement as to the September 14, 1996 date for the taking of depositions. The Court therefore finds that for this reason as well, the deposition subpoenas issued from Federal Court should be quashed. The Court specifically finds that all 104 depositions should not have been set at the same time on the same date, that is 9:00 a.m. on September 14, 1996. Such a practice would be oppressive and unduly burdensome to deponents and opposing counsel. It would be impossible for counsel to conduct 104 depositions at the same time without causing long waits for deponents.

O. The Court further finds that in view of statements made by counsel to the Court on July 26, 1996, Plaintiff's correspondence to potential deponents dated July 31, 1996 and the options contained therein were inappropriate under the circumstances in that the letter stated the potential deponents were still required to appear and be deposed despite plaintiff's representation that no depositions would be had, and also the letter improperly required potential deponents to waive their rights to witness fees and proper service.

R. The Court finds that discovery in this case had become unwieldy and that the State is responsible.

motions. Accordingly, defendants have presented extensive oral and written arguments in support of their positions, and the Court has seriously considered their arguments. Further, defendants are benefitted by the withdrawal of plaintiff's RICOs claims, as the elimination of RICO claims simplifies the case against defendants.

In light of these facts, and the conclusion that the other factors weigh heavily in favor of state adjudication, the Court finds the federal court should not retain jurisdiction over this matter.

Finally, remand rather than dismissal is appropriate in this case because it will further prompt and efficient resolution of the state law controversies. Remand will avoid the parties having to refile their papers in state court, and will avoid the state court from having to reprocess the case. *Cohill,* 484 U.S. at 353, 108 S.Ct. at 620.

For the reasons stated above, the Court REMANDS this matter to state court.