Cardell PAYNE and Dahlia Payne, Plaintiffs,

v.

PARKCHESTER NORTH CONDOMINIUMS et al., Defendants.

No. 00 Civ. 4253(WK).

United States District Court, S.D. New York.

March 29, 2001.

Richard A. Glovin, New York City, for Plaintiffs.

Brian M. Hussey, Law Offices of Charles X. Connick, PLLC, Mineola, NY, Steven R. Payne, Law Offices of Michael W. Kennedy, LLC, New York City, for Defendants.

## MEMORANDUM & ORDER

WHITMAN KNAPP, Senior District Judge.

Plaintiffs Cardell and Dahlia Payne (hereinafter, the "plaintiffs") move to amend their complaint to strike all federal claims and then to remand the case back to state court. For the reasons stated below, we deny both motions.

## BACKGROUND

Plaintiffs are husband and wife and residents of an apartment located in the Parkchester North Condominiums in the Bronx. According to plaintiffs, Cardell was beaten, pepper-sprayed, handcuffed and arrested by the building's security guards, some of whom have "Special Patrol Officer" status granted by the New York City Police Department. Dahlia also claims that one or more of these guards struck her. The defendants include Parkchester North Condominiums Associates, The Parkchester South Condominium, Inc., Parkchester Preservation Management, LLC, and several security officers (hereinafter, collectively, the "defendants").

In August 1999, plaintiffs sued in the Supreme Court of New York, Bronx County. In their original complaint, and in three places in their October 1999 amended complaint, plaintiffs expressly claim violations of specific federal constitutional rights. (See Am. Compl. ¶¶ 1, 22, 30 (Fourth and Fourteenth Amendments)). They also allege assault and battery, false arrest and imprisonment, malicious prosecution, negligence, and other state torts. In July 2000, defendants served interrogatories. Plaintiffs did not answer the discovery requests until late February 2001, but the parties have taken and/or scheduled depositions.

At about the same time that plaintiffs filed their amended complaint in Supreme Court, defendants attempted unsuccessfully to remove the case to this Court, and at least some of the parties' lawyers labored under confusion about the lawsuit's status. In April 2000, counsel for defendants ascertained that the Clerk of this Court had not assigned a docket number. Accordingly, in June, defendants again tried to file for removal, this time successfully.

Over seven months after such removal, on January 24, 2001, we held a pre-motion conference (requested by defendants) during which we and they learned for the first time that plaintiffs challenged our jurisdiction. Plaintiffs now move (as urged in their reply brief) again to amend their complaint, deleting all references to the United States Constitution. Further, they ask us to remand the case.

Plaintiffs' opening motion papers fashion a very weak argument for remand, namely, that their federal claims represent "nothing more than state court claim[s] recloaked in constitutional garb." (Pls. Mem. at 3). In two pages of opposition, defendants vanquish plaintiffs' effort. But then, in their reply papers, plaintiffs take a new stance, asking for leave to drop their explicitly federal causes of action and to substitute state and local analogues.

## DISCUSSION

█ Ordinarily, we should "freely" grant leave to amend the complaint and

dismiss causes of action "when justice so requires." Fed.R.Civ.P. 15(a). Yet in deciding whether to approve amendment, we must consider not only any substantial prejudice to defendants, undue delay, or bad faith, but also whether such action implicates our subject matter jurisdiction. *Richardson Greenshields Secs., Inc. v. Lau* (2d Cir.1987) 825 F.2d 647, 653 n. 6; cf. *American Charities for Reasonable Fundraising Regulation, Inc. v. Shiffrin* (D.Conn.1999) 46 F.Supp.2d 143, 154, *aff'd*, 205 F.3d 1321 (2d Cir.2000). If we authorize plaintiffs to drop their federal claims, then in our discretion we can remand the case or, under extraordinary circumstances, retain the state claims under supplemental jurisdiction. 28 U.S.C. § 1367(c). In making the determination whether to remand, we must weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill* (1988) 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720.

Crucially, we must also take into account whether the plaintiffs have tried to manipulate the forum (*Id.* at 357, 108 S.Ct. 614):

> A district court can consider whether the plaintiff has engaged in any manipulative tactics when it decides whether to remand a case. If the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case.

Over the years, several courts have confronted the question now before us, namely, whether to permit a plaintiff voluntarily to strike his federal claims after removal and, if so permitted, whether thereafter to remand. Several of these cases adopt one of two opposing rules or directions. Curiously, most of the opinions acknowledge only whichever rule is adopted therein and do not address the counterarguments. On the one hand, courts disposed to reject remand when a plaintiff clearly and intentionally attempts to engage in forum manipulation typically cite three rationales for their rejection – time and resource conservation, Congressional intent, and a sense of fair play. *See, e.g., Boelens v. Redman Homes, Inc.* (5th Cir.1985) 759 F.2d 504, 507 & n. 2 (citing cases); *Bradford v. Olympia Courier Sys., Inc.*, No. CV 96–5693, 1997 WL 570720, at *1–3 (E.D.N.Y. Sept. 2, 1997) (citing cases); *In re Bridgestone/Firestone, Inc.* (S.D.Ind. 2001) 128 F.Supp.2d 1198, 1201–02 (citing *Boelens; Hammond v. Terminal R.R. Ass'n* (7th Cir.1988) 848 F.2d 95); *Moscovitch v. Danbury Hosp.* (D.Conn.1998) 25 F.Supp.2d 74, 79; *Olmstead v. Beverly Enterprises–Florida, Inc.*, No. 96–1941–Civ.–T–17B, 1997 WL 155410, at *3 (M.D.Fla. Mar. 17, 1997); *Greenwald v. Palm Beach County* (S.D.Fla.1992) 796 F.Supp. 1506, 1506–07.

We transcribe here an oft-quoted articulation of these reasons (*Boelens*, 759 F.2d at 507):

> "When a plaintiff chooses a state forum, yet also elects to press federal claims, he runs the risk of removal. A federal forum for federal claims is certainly a defendant's right. If a state forum is more important to the plaintiff than his federal claims, he should have to make that assessment before the case is jockeyed from state court to federal court and back to state court. The jockeying is a drain on the resources of the state judiciary, the federal judiciary and the parties involved; tactical manipulation [by the] plaintiff ... cannot be condoned." *Austwick v. Board of Ed.* (N.D.Ill.1983) 555 F.Supp. 840, 842. The rule that a plaintiff cannot oust removal jurisdiction by voluntarily amending the complaint to drop all federal questions [also] serves the salutary

purpose of preventing the plaintiff from being able to destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute.

In contrast, other courts justify forum manipulation as "a legitimate tactical decision":

The defendant is not obligated to remove; rather, he has the choice either to submit to state court resolution of his claims, or to assert his right to a federal forum. If the defendant rejects the plaintiff's offer to litigate in state court and removes the action, the plaintiff must then choose between federal claims and a state forum. Plaintiffs in this case chose the state forum. They dismissed their federal claims and moved for remand with all due speed after removal. There was nothing manipulative about that straightforward tactical decision, and there would be little to be gained in judicial economy by forcing plaintiffs to abandon their federal causes of action before filing in state court.

*Baddie v. Berkeley Farms, Inc.* (9th Cir. 1995) 64 F.3d 487, 491; *see also, e.g., Chow v. Hirsch,* No. C–98–4619, 1999 WL 144873, at *5 (N.D.Cal. Feb. 22, 1999) (Plaintiff did not attempt to "manipulate" the forum when she "made a strategic decision to concentrate on her state law claims in an attempt to have them heard in state court. This is not improper."); *Tennessee ex rel. Pierotti v. Parcel of Real Property,* 937 F.Supp. 1296, 1303 (W.D.Tenn.1996) ("plaintiff is allowed to determine what claims it brings against defendants").

We are not obligated by any Second Circuit precedent to observe either of the two competing general policies. We may use our discretion. The Fifth Circuit announced in 1985 that the "no remand" position represents the "majority view," and that Court included in its list of adherents a 1963 Second Circuit case. *Boelens,*

759 F.2d at 507 & n. 2 (citing *Hazel Bishop, Inc. v. Perfemme, Inc.* (2d Cir.1963) 314 F.2d 399, 403–04). The instant defendants also rely upon *Hazel Bishop.* Apparently, though, the tide has shifted, and more recent opinions tend to favor remand. *But see In re Bridgestone,* 128 F.Supp.2d at 1202 & n. 4 (very recent case quoting the language in *Boelens* awarding victory to the purported "majority view"); *Olmstead,* 1997 WL 155410, at *2–3 (same). Moreover, post–1963 United States Supreme Court decisions have toppled this aspect of the *Hazel Bishop* holding. That Second Circuit case expressly followed *Brown v. Eastern States Corp.* (4th Cir.1950) 181 F.2d 26, 28–29, *cert. denied,* 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631 (1950), which has been "eviscerated" by the Supreme Court. *See Kimsey v. Snap–On Tools Corp.* (W.D.N.C.1990) 752 F.Supp. 693, 694–95 (citing *Cohill; United Mine Workers of Am. v. Gibbs* (1966) 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218); *see generally, e.g., Marcus v. AT&T Corp.* (2d Cir.1998) 138 F.3d 46, 57 ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well"); *see also* 28 U.S.C. § 1367(c)(3).

One case in this District has embraced the general policy to remand. *Certilman v. Becker* (S.D.N.Y.1992) 807 F.Supp. 307, 309–10 (Motley, J.). That decision cited the Supreme Court in *Cohill, supra,* for the proposition that district courts have discretion to remand even though they must consider "manipulation" as a factor weighing against a remand. *Id.* Nobody denies this. However, *Certilman* did not acknowledge any specific opposing authority or argument, simply noting that plaintiffs had moved quickly to remand and that returning to state court "would merely effectuate plaintiffs' original choice of a state forum." *Id.* at 310.

Since both general rules contain flaws,[1] we believe that, rather than fixate upon a bright-line rule, we should glean from the full range of cases the circumstances upon which to focus a fact-intensive inquiry. Applying this approach, we find that, in the atypical case before us, the balance of factors weighs against remand even if we permitted the complaint to be amended.

### Intentional Manipulation

It makes more sense to remand if the particular plaintiffs did not intentionally maneuver the forum. *See Cohill,* 484 U.S. at 357, 108 S.Ct. 614. Even the remand-friendly *Baddie* Court expressed concern about malicious forum-shopping, and thus it suggested that the state court, after remand, can consider sanctioning plaintiffs who acted in "bad faith" or "for the sole purpose of putting defendants through the removal-remand procedure." 64 F.3d at 490 n. 3. However, a serious inquiry in the first instance by the federal court into possible bad faith seems more efficient and more apt to discourage plaintiffs from testing the boundaries of ethical advocacy.

The most innocent request to strike federal claims materializes when a plaintiff did not initially realize that his complaint would be construed as containing federal subject matter. *See, e.g., Moscovitch,* 25 F.Supp.2d at 79 ("it does not appear that the plaintiff intended his original claims . . . to be federal in character and he did not seek relief under a federal statute"); *Dula v. McPherson,* No. 99 CV 347, 1999 WL 1939238, at *2–3 (M.D.N.C. Aug. 4, 1999) (no forum manipulation when it appeared that "plaintiff never intended to bring any federal claim"; complaint did not cite any federal statutes).

Less innocently but still relatively acceptably, a particular plaintiff may seek to avoid a federal venue but *also* have *other, substantive* reasons to alter his pleadings. *See, e.g., Olmstead,* 1997 WL 155410, at *3 (the court was "not convinced that plaintiffs' *sole* purpose is to destroy federal jurisdiction"; it was "not persuaded that plaintiffs have eliminated all federal claims in a bad faith attempt to defeat federal jurisdiction" when "the main thrust of plaintiffs' original complaint was state law breach of contract claims . . . and . . . third party beneficiary claims") (emphasis added); *Kimsey,* 752 F.Supp. at 694 (the court could "envision a host of reasons" why plaintiffs no longer wanted to pursue federal RICO claims, "including the expense and complexity" of such claims).

■ In the case at bar, this factor tends *to persuade us to deny plaintiffs' motion to* remand, for plaintiffs have manifestly resolved to manipulate their forum without any reasonable or fair justification. First, plaintiffs must have known that they were advancing federal claims, for they invoked the United States Constitution in three logical places in their complaint. In so doing, they risked removal. Moreover, they waited months and then surprised their opponents and us with their motion when threatened with potential motions to compel and for summary judgment. This timing suggests unreasonable delay[2] and perhaps even a kind of retaliatory intent.

---

1. For example, with regard to one of the three underlying rationales for the "no remand" rule, the legislative intent argument, Congress has crafted a statutory scheme whereby plaintiffs (and not just defendants) have a choice: Plaintiffs may opt to replead and return to state court at the discretion of the federal district courts.

2. Granted, plaintiffs' counsel understandably became confused in early 2000 about where this suit was then pending, given that defendants thought that they had filed for removal by that time. *Still,* plaintiffs' lawyer received service of a notice of removal in June 2000, and he could easily have verified the effectiveness of the removal filing at any time thereafter.

■ Also, the instant plaintiffs proffered very weak arguments for remand and installed them in reply papers. *Cf. Pierotti,* 937 F.Supp. at 1308 (plaintiffs made a series of implausible arguments in support of remand in a manner that, had the court agreed to their request, would have denied defendants any opportunity to respond). Finally, plaintiffs candidly admitted at oral argument that they had no additional reason beyond forum-shopping for now seeking to hinge their case on state law.[3]

### *Prejudice, Resource–Wasting, & Untimeliness*

We must also contemplate other variables, and we now turn to the three interrelated factors of prejudice, resources, and time. When plaintiffs promptly request amendment and remand, less chance exists that the federal court or the defendants have expended significant time or assets on motions, conferences, or other aspects of federal procedure. In fact, in many of the cases condoning remand, the plaintiff had moved within *days* after removal, before discovery and before any attempt at resolution on the merits. *See, e.g., Certilman,* 807 F.Supp. at 308, 310 ("early stages" of litigation; no prejudice to defendants; motion to remand filed eleven days

after removal); *Baddie,* 64 F.3d at 489, 491 (motion filed "with all due speed," sixteen days after removal); *Moscovitch,* 25 F.Supp.2d at 79 (motion to remand before answer, discovery, or scheduling order); *Chow,* 1999 WL 144873, at *3 (no initial pretrial conference or discovery); *In re Bridgestone,* 128 F.Supp.2d at 1199–1200 (motion to remand filed two days after removal); *Riley v. Carson Pirie Scott & Co.,* 946 F.Supp. 716, 717 (E.D.Wis.1996) (the litigation had "just begun").

In contrast, in the current case, plaintiffs waited over seven *months* to file for remand, some discovery has already occurred under the Federal Rules, and this Court has become quite familiar with the case through pre-motion conferences. *Cf. Carbonara v. Olmos,* No. CV 93–7548 SVW, 1994 WL 370031, at *2 (C.D.Cal. Mar. 4, 1994) (federal courts had "not received full briefing on the merits" and had "not expended any substantial judicial resources toward resolving the merits"). Thus, remand would postpone the litigation, waste judicial resources, and perhaps cause inconsistences in discovery procedure. Similarly, we find that defendants would suffer appreciable prejudice and inconvenience in having to file their summary judgment motion weeks later than they anticipated in front of a judge unfamiliar with the case.[4]

---

**3.** Plaintiffs could have secured a state tribunal by alleging, at their first opportunity, only non-federal causes of action. The instant defendants raise the specter of the "artful pleading doctrine," which precludes a plaintiff from frustrating a defendant's right to removal by carefully "framing in terms of state law a complaint the real nature of [which] is federal, ... or by omitting to plead necessary federal questions." *Fax Telecomunicaciones Inc. v. AT & T,* 138 F.3d 479, 486–87 (2d Cir.1998) (quoting *Derrico v. Sheehan Emergency Hosp.* (2d Cir.1988) 844 F.2d 22, 27; *see generally* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 14B *Federal Practice & Procedure: Jurisdiction* 3d § 3722 (1998). That doctrine does not apply here,

though, because federal law is not intrinsic or necessary to a police brutality case. State and local statutes regulate the behavior of police officers, and plaintiffs could have sued under those statutes as well as under New York state common law.

**4.** Also, plaintiffs have forced defendants to dispute contentions advanced for the first time in the reply brief, and plaintiffs now want to complicate the case by substituting different causes of action. *Cf. Pierotti,* 937 F.Supp. at 1305, 1308–09 (considering whether plaintiff's "inappropriate" late filing for remand adversely impacted defendants' opportunity to respond and whether defendants benefitted from the simplification of the law-

Finally, we deny not only plaintiffs' motion to remand but also their motion for leave to amend their complaint. Plaintiffs admit that they asked for amendment solely to induce remand, and we have decided not to remand in any event. If within twenty days plaintiffs can (and choose to) provide a legitimate reason to revise their complaint, we will consider that request, but only if such revision will not significantly delay the proceedings before us or prejudice their adversaries. Barring such a showing, this litigation will move ahead with the federal and state claims as alleged in the October 1999 amended complaint.

### *CONCLUSION*

For the foregoing reasons, we DENY plaintiffs' motion for leave to amend their complaint and DENY their motion to remand.

**SO ORDERED.**

suit made possible by the withdrawal of plaintiff's RICO claims).